**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Daniel Scott GAHAGAN (87–1991), Michael John Gahagan (87–1993), Susan Soper (87–1992), Defendants–Appellants.**

**Nos. 87–1991 to 87–1993.**

United States Court of Appeals,
Sixth Circuit.

Argued and Submitted Aug. 5, 1988.

Decided Jan. 25, 1989.

Rehearing Denied March 3, 1989.

Norman R. Mueller, Saskia A. Jordan (argued), Denver, Colo., for Daniel Scott Gahagan.

Janet Parker (argued), Asst. U.S. Atty., Bay City, Mich., for plaintiff-appellee.

Jeffrey W. Van Treese, Hoffman, Hoffman & Van Treese, Charlevoix, Mich., for Susan Soper.

Gregory G. Justis, Petoskey, Mich., for Michael John Gahagan.

Before ENGEL, Chief Circuit Judge, MILBURN, Circuit Judge and DOWD, District Judge.*

DOWD, District Judge.

## I. INTRODUCTION.

Defendants-appellants Daniel Gahagan and Michael Gahagan appeal from the judgment of the district court entered pursuant to Rule 11(a)(2) plea agreements with the government wherein the Gahagans pleaded guilty to the charge of possessing with intent to distribute approximately 311 grams of hashish. Defendant-appellant Susan Soper appeals from the judgment of the district court entered pursuant to a Rule 11(a)(2) plea of guilty to a superseding information in which she was charged with conspiracy to possess marijuana. Simply stated, this appeal raises complicated search and seizure issues. Specifically, the two primary issues are whether the search warrant complied with the particularity requirement of the fourth amendment, and in the alternative, whether the scope of the warrant was exceeded in its execution.

## II. PROCEDURAL BACKGROUND.

On May 21, 1987 an indictment was returned against Daniel Gahagan, his brother Michael Gahagan, and Susan Soper. A superseding indictment against the same three individuals was returned on July 29, 1987. The three were charged with conspiracy to possess with the intent to distribute and to distribute marijuana and hashish in count one of the indictment. Daniel Gahagan and Michael Gahagan were also charged in count five with distributing approximately 141 grams of hashish, in count six with possession with the intent to distribute approximately 840 grams of marijuana, and in count seven with possession with the intent to distribute approximately 311 grams of hashish. Michael Gahagan, in addition to being charged in the conspiracy charge in count one, and counts five, six and seven, was charged in count two with distributing approximately 108 grams of marijuana, and count three with distributing approximately eighty-five grams of marijuana, and count four with distributing approximately 110 grams of marijuana.

The Gahagans filed a motion to suppress the evidence and a motion in limine on June 25, 1987. A second motion in limine was also filed on July 13, 1987. The appellant Soper joined in the motions and also filed a motion to sever. The district court heard testimony and oral arguments on the motions on July 29 and July 30, 1987. The district court denied the motion to suppress the evidence and granted in part and denied in part the motions in limine. After denying the motion to suppress, the district court acknowledged the closeness of the issues and suggested the possibility of a

---

* Honorable David D. Dowd, Jr., Judge, United States District Court for the Northern District of Ohio, sitting by designation.

conditional plea. Joint Appendix ("J.A.") at 386–87.

Subsequent to the court's rulings, the three defendants entered guilty pleas while reserving their rights for appeal pursuant to Rule 11(a)(2), Fed.R.Cr.P.J.A. at 89–98, 103. The Gahagans pled guilty to count seven of the indictment and each was sentenced to a two-year term of imprisonment, followed by a two-year special parole term. Susan Soper entered a plea of guilty to a superseding information and was sentenced to a sixty-day term of imprisonment. A timely notice of appeal was filed on behalf of the three defendants.

### III. THE SEARCH.

Prior to the search in September of 1986, the defendants were under an investigation initiated by Jerry Boerema, an investigator for Otsego County Prosecutor's Office, for a period of approximately nine months. During that period, an informant allegedly made three separate purchases of illegal narcotics under Boerema's supervision ("controlled buys") at a Gahagan residence in January, February, and March of 1986. In September of 1986 and shortly before the search of the Gahagan residence, Boerema contacted the Drug Enforcement and Administration ("DEA") office in Saginaw, Michigan and requested assistance from the DEA. Michael Vetter, a DEA agent, was assigned to the case.

On September 12, 1986, the same informant who had made the three previous control buys made a fourth controlled buy from the Gahagans. Thereafter, Agent Vetter sought a federal search warrant from Judge William Porter, a circuit court judge in the State of Michigan. Judge Porter issued the warrant based upon the affidavit of Michael Vetter, which was based upon Jerry Boerema's nine month investigation.

The warrant itself listed the premises to be searched as "7609 Douglas Lake Road, Johannesburg, Michigan." J.A. at 64. Vetter's affidavit described the premises for which the warrant was sought as

> 7609 Douglas Lake Road, Charleton Township, Otsego County, Johannesburg, Michigan, three story wood frame house with natural wood siding with an unattached four-car garage with natural color siding. Also located on the property is a single story wood frame log cabin-type structure painted dark brown in color. Also located on the property is a small wood frame shed-type building with a metal roof.

J.A. at 65. Vetter's affidavit incorporated a second affidavit, a multipage document, which set out in detail the investigation, the controlled buys, and facts upon which the officers believed established probable cause.[1]

---

1. Vetter used a printed affidavit form calling for a recitation of the grounds for the search and seizure and the facts that established the grounds for the issuance of the search warrant. That recitation was accomplished by the attached and incorporated second affidavit which was seven pages in length and contained thirty-six separate paragraphs of information. The affidavit established that a confidential informant had purchased controlled substances, marijuana and its derivatives, from the Gahagans over a six-year period and that three controlled purchases of marijuana were made at the property known as 7609 Douglas Lake Road on January 29, 1986, February 12, 1986 and March 20, 1986. ¶ 7, J.A. at 66–67. The affidavit also established that Officer Boerema advised Vetter that the confidential informant had been informed by the Gahagans that narcotics were kept in different locations upon and about the property located at 7609 Douglas Lake Road. ¶ 9, J.A. at 67. The affidavit also established that when controlled substances were purchased

from the Gahagans, they would often take place in a one-story wood frame cabin and the Gahagans would obtain the marijuana from other locations on the property. The information in the affidavit also established that the Gahagans engaged in a detailed accounting of the purchases made on a cash basis and a credit basis and recorded such transactions in a separate ledger. Joint Appendix 67–68.

The affidavit also set out the factual details regarding the controlled buy on September 12, 1986, the day of the search. ¶¶ 30–36, J.A. at 70–72. The affidavit established that the affiant, Vetter, was in contact with the confidential informant before and after the controlled buy. Officer Vetter searched the confidential informant and his vehicle for controlled substances prior to the controlled buy. Officer Vetter then gave the informant government funds that were pre-marked with instructions to drive his vehicle to 7609 Douglas Lake Road and purchase marijuana from the Gahagans. Officer Vetter kept the confidential informant under direct

The search warrant was executed on that same day, i.e., September 12, 1986. Vetter conducted a pre search briefing session for those officers who participated in the search and provided them a description of the premises to be searched. J.A. at 160–62, Tr. at 70–72. Boerema also assisted Vetter in the pre search briefing session and described the places to be searched. J.A. at 256–62; Tr. at 193–99. Vetter and Boerema instructed the officers that the place to be searched was Cabin # 3 and House B as they later became known.

The search led to the discovery of approximately 840 grams of marijuana and 311 grams of hashish. The search resulted in the discovery of $4000 in U.S. currency, including $700 in marked bills from the controlled buy which had been made earlier on September 12, 1986. Other items discovered as a result of the search included cocaine paraphernalia, a hand scale, a black and brown ledger book, a "dial-a-gram" scale, a forty-five pound capacity triple beam scale, and two calculators. A number of weapons also were discovered, including a loaded .22 caliber semi-automatic pistol, a loaded .44 caliber magnum revolver, a loaded .357 caliber six shot revolver, a loaded .20 gauge pump shotgun, and a .22 caliber six shot revolver. The bulk of the narcotics discovered were found in Cabin # 3 and the remaining narcotics and other items were found generally in House B. J.A. at 73–85.

The motion to suppress the evidence was based upon the claim that the warrant failed to particularly describe the place to be searched. Specifically, the appellants asserted that the address of "7609 Douglas Lake Road" alone, was insufficient to include Cabin # 3.[2] The appellants maintained that Cabin # 3 is a separate residence with its own address of 7577 Douglas Lake Road. The appellants did not raise the claim that the probable cause determination by the state court judge was deficient, but instead focused their arguments on the particularity requirement, and in the alternative, the argument that assuming the warrant was valid, the officers exceeded the scope of the warrant in their search.

The circumstances surrounding the search are complicated by the nature of the location searched and require a detailed explanation. A better understanding of the circumstances and facts surrounding the search may be gained by a reference to Appendix I.[3]

The district court conducted a two-day evidentiary hearing on the motions. During the hearing, a detailed description of the physical lay-out of the area searched was developed. The general area at issue in this case is a rural, large piece of property with multiple dwellings and structures. It was developed at the hearing, that there were four separate dwellings located in the general area.

With reference to Appendix I, the dwelling identified as "Cabin 3" was the principal residence of the defendant Daniel Gaha-

surveillance and observed the informant drive into and enter the property known as 7609 Douglas Lake Road. Officer Vetter and other law enforcement officials observed the confidential informant exit the property of 7609 Douglas Lake Road and was kept under surveillance until a predetermined meeting place was reached by the confidential informant. After receipt of the marijuana purchased by the confidential informant, another search of the confidential informant was conducted including the search of his vehicle.

The confidential informant advised Officer Vetter that he did in fact drive to 7609 Douglas Lake Road, as directed, and exited his motor vehicle near the front door of the main dwelling at 7609 Douglas Lake Road. The confidential informant advised Officer Vetter that he entered the small cabin with Michael John Gahagan and thereafter purchased marijuana from both the Gahagans.

2. The appellants assert that if the search of Cabin # 3 was constitutionally deficient then all of the fruits of the search are also bad including the search of House B.

3. Appendix I is the Court's reconstruction of the chalkboard exhibit used by the district court and counsel at the evidentiary hearing and supplied to this Court via a copy of a photograph of the chalkboard and the markings thereon. J.A. at 118.

gan at the time of the search.[4] Cabin # 3's address is 7577 Douglas Lake Road. Cabin # 3 is a single story wood, cabin-type home. The defendants Michael Gahagan and Susan Soper resided in "House B." The address for House B is 7609 Douglas Lake Road. House B is a multi-story wood frame house with an unattached garage that was partially completed and under construction since 1981. Daniel Gahagan was a co-owner of House B. When the search warrant was executed, the three appellants were found in Cabin # 3.

A cabin identified as # 2 and the house identified as # 4 were not owned or occupied by any of the appellants at the time of the search. However, prior to May of 1986, Daniel Gahagan owned House # 4 and it was in this house that the first three controlled buys took place. In May of 1986 he sold the property to a third party. House # 4 is a multi-story wood frame house with a two-car unattached garage. The address for House # 4 is 7539 Douglas Lake Road. Cabin # 2 is a single story wood, cabin-type house located approximately one hundred yards north of House # 4.

Driveway # 1 was identified as a driveway that serviced House B, 7609 Douglas Lake Road. There was a dispute over whether Driveway # 1 extended through the foliage to Cabin # 3. The Gahagans claim that there was "a path" that extended along Driveway # 1 past House B to Cabin # 3. However, there was testimony from Agent Vetter, Detective Boerema, and a bulldozer operator who had done work for the Gahagans, that the actual driveway extended to Cabin # 3. Agent Vetter testified that he drove a full-size Bronco on the day of the search between House B and Cabin # 3 without using the four-wheel drive capability.

At one time, Driveway # 2 serviced House # 4 and branched off and also serviced Cabin # 3. When House # 4 was sold in 1986, it was agreed by Daniel Gahagan and the buyer that Driveway # 2

would no longer service Cabin # 3. A new driveway, Driveway # 3, was constructed to provide access to Cabin # 3. Driveway # 3, however, did not exist for the majority of the time the defendants were under investigation but was installed in August, 1986.

At the end of Driveway # 1, the address of 7609 Douglas Lake Road was posted on a sign. The address of 7577, Cabin # 3, was posted at the end of Driveway # 2. J.A. at 300; Tr. at 244. The address of 7539, House # 4, was also posted at the end of Driveway # 2. There was no address posted at the end of Driveway # 3. There were no address markings on either House B or Cabin # 3.

At the time that Gahagan owned House # 4 a mailbox was at the end of Driveway # 2 and mail for House # 4, Cabin # 3, and House B were all received at that mailbox. After the sale of House # 4, the mailbox was moved to the end of Driveway # 1 and mail was received at that mailbox for both Cabin # 3 and House B. There was no mailbox at the end of Driveway # 3.

The appellants' particularity argument was based primarily on the fact that the address of 7609 Douglas Lake Road alone was insufficient to include Cabin # 3 which had its own address of 7577 given the officers' knowledge that the defendants had lived in at least three of the dwellings identified and that there were transactions that occurred in more than one house. Furthermore, the appellants argued that the affidavit which was relied upon by the judge could not be looked to for a further description of the property to be searched because the affidavit was neither attached nor specifically incorporated in the warrant.

The appellants also argued to the district court that the officers exceeded the scope of the warrant when they executed the warrant. They argued that the officers should have concluded that they were outside the scope of the warrant when they arrived at House B and discovered more

---

**4.** The numbers and letters used to identify the dwellings are derived from the terms used by the parties during the evidentiary hearing.

than one dwelling. They argued that a reasonable pre-search investigation would have revealed the fact that Cabin # 3 was a separate residence apart from House B. The appellants cited the district court to *Maryland v. Garrison*, 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987). The appellants attempted to underscore Daniel Gahagan's testimony that when he read the warrant after he was served with it, he told the executing officers that they had the wrong address for a search of Cabin # 3.

The trial judge ruled from the bench and denied the motions to suppress the evidence. Initially, the district court found that "the warrant does not, on its face, without cross reference, include number three." J.A. at 370; Tr. at 348. The district court found that the warrant cross referenced the affidavit notwithstanding the fact that the affidavit was not attached to the warrant. J.A. at 370, 372; Tr. at 348, 350. The trial judge stated that

> The only thing the staple would do would be to inform the Defendant of the scope of the search. It wouldn't have changed, absolutely, anything with respect to the officers, because these officers knew with absolute certainty that they were being authorized by the judge to search number three and B. There wasn't any question they understood it through cross reference to the affidavit.

J.A. at 370; Tr. at 348. The trial court concluded that the officers had acted in good faith in the execution of the warrant believing that they had been issued a warrant to search the premises of House B and Cabin # 3. Further, the trial judge was satisfied that the issuing judge authorized the search for the two units.

The district court ultimately denied the motion to suppress based upon *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). J.A. at 374; Tr. at 352. The district court stated:

> [N]ot because of perfection here, not because 7609 on the face of the warrant describes it, not because of incorporation by reference—because I'm impressed with the idea one of the purposes of having it on the face of the warrant

requires the incorporation by reference to have it attached to it is to inform the Defendant—but simply because I believe that the officers, while there was some negligence involved, hindsight is much easier than foresight, and while there was some carelessness involved in the way the matter was handled, while they might have used the staple gun, I find that they were in good faith when they went out there.

> They believed they had given the Court information, and the Court had authorized them to include these two premises, and there was nothing there.

> While 7609 didn't include number three, I don't see anything on the premises to tell them it didn't. There was no sign outside the road to number three, the new road, no different number, nothing to inform them it didn't.

> And if there was, there would be an argument that affected their good faith.

> I don't reject the possibility there [sic] may have gotten concerned and decided to get another warrant, then for some reason or another, backed off on their intentions. I don't need to ever know whether that occurred or not.

> So the motion to suppress is denied based on Leon.

J.A. at 373–74; Tr. at 351–52.

## IV.   DISCUSSION/ANALYSIS.

Appellant Daniel Gahagan articulates the four major issues on appeal: (1) whether the trial court erred in denying defendants' motion to suppress evidence on the basis that the warrant failed to describe the properties to be searched with sufficient particularity under the fourth amendment; (2) assuming the validity of the warrant, whether the execution of the warrant exceeded its scope in violation of the fourth amendment; (3) whether the *Leon* good-faith exception to the warrant requirement is applicable to this case; and (4) whether it was error for the trial court to deny defendant's motion in limine as it related to firearms and ammunition. Appellant Michael Gahagan joins in the first three issues presented by the appellant Daniel Ga-

hagan and specifically addresses the fourth issue in his brief.

The appellant Soper separately addresses the issue of whether the trial court erred in denying her motion for a severance and joins in the issues raised by the Gahagans.

■ At the outset, we find it necessary to frame the scope of our inquiry. The appellants claim that because the search of Cabin # 3 was constitutionally inadequate the entire search was reduced to a general search, and therefore all the evidence seized from both Cabin # 3 and House B should be suppressed. We find, however, that even if we should find an unlawful search of Cabin # 3, that alone does not invalidate the entire search and the evidence seized as a result of the search. It is clear that the warrant sufficiently describes House B and the appellants do not raise any specific claims as to the search of House B. An "[u]nlawful seizure of items outside a warrant does not alone render the whole search invalid and require suppression of all evidence seized, including that lawfully taken pursuant to the warrant." *United States v. Lambert,* 771 F.2d 83, 93 (6th Cir.1985) (citing *Marvin v. United States,* 732 F.2d 669, 674 (8th Cir.1984); *United States v. Tamura,* 694 F.2d 591, 597 (9th Cir.1982)). Consequently, our focus is limited to the evidence seized as a result of the search of Cabin # 3 only.

A. *Particularity of the Warrant.*

The appellants argue, on appeal, that the warrant failed to comply with the particularity requirement of the fourth amendment because the warrant itself does not authorize the search of Cabin # 3, and the defect in the warrant cannot be cured by a reliance on the affidavit because the affidavit was not specifically incorporated in the warrant and it was not attached to the warrant. The government takes the position that although the district court found that the warrant did not specifically include Cabin # 3, the trial judge determined that the officers were entitled to the good-faith exception under *Leon.*

In our view, the resolution of the appellants' first claim turns upon the following questions: (1) whether the warrant itself described the place to be searched with sufficient particularity; (2) if the warrant failed to describe the place to be searched with sufficient particularity, whether the affidavit's description of the property to be searched cured the defect in the warrant; and (3) if the affidavit cannot cure the warrant, does the good-faith exception of *Leon* apply.

■ The standard of review for this Court in determining whether a search warrant describes the place to be searched with sufficient particularity is a *de novo* review. *United States v. Fannin,* 817 F.2d 1379, 1381 (9th Cir.1987); *United States v. McClintock,* 748 F.2d 1278 (9th Cir.1984).

■ The test for determining whether the description in the warrant is sufficient to satisfy the particularity requirement is whether "the description is such that the officers with a search warrant can with reasonable effort ascertain and identify the place intended." *Steele v. United States,* 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925); *United States v. Votteller,* 544 F.2d 1355, 1362 (6th Cir.1976). As this Court held in *United States v. Lemmons,* 527 F.2d 662, 666 (6th Cir.), *cert. denied,* 429 U.S. 817, 97 S.Ct. 60, 50 L.Ed.2d 77 (1976), "the Fourth Amendment 'safeguard is designed to require a description which particularly points to a definitely ascertainable place so as to exclude all others.'" (quoting *People v. Watson,* 26 Ill.2d 203, 186 N.E.2d 326 (1962). In sum, "[t]he test for determining the sufficiency of the description of the place to be searched is whether the place to be searched is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched." *United States v. Gitcho,* 601 F.2d 369, 371 (8th Cir.), *cert. denied,* 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979). *See United States v. Collins,* 830 F.2d 145, 146 (9th Cir.1987); *United States v. Prout,* 526 F.2d

380, 387–88 (5th Cir.), *cert. denied,* 429 U.S. 840, 97 S.Ct. 114, 50 L.Ed.2d 109 (1976). Therefore, the test can be divided into two components: (1) whether the place to be searched is described with sufficient particularity as to enable the executing officers to locate and identify the premises with reasonable effort; and (2) whether there is reasonable probability that some other premises may be mistakenly searched. *See, United States v. Turner,* 770 F.2d 1508, 1509 (9th Cir.1985).

■ It is clear that the warrant itself did not contain a sufficient description of Cabin # 3, 7577 Douglas Lake Road. The description in the warrant identified only the address of 7609 Douglas Lake Road, while in fact Cabin # 3 was not a part of that address. The trial judge specifically found that the description in the warrant did not include Cabin # 3. J.A. at 370; Tr. at 348.

However, we find that the description contained in the affidavit sufficiently described the place to be searched and that description included Cabin # 3. The description in the affidavit sufficiently described both House B and Cabin # 3 so that the executing officers could reasonably ascertain the premises to be searched. Moreover, we find that the affidavit can be relied upon, in addition to other facts known by the executing officers, to cure the defect in the warrant.

■ A warrant that fails to describe the area to be searched with sufficient particularity can be cured by an accompanying affidavit if the affidavit is attached to the warrant and the warrant incorporates the affidavit by reference. *See, United States v. Klein,* 565 F.2d 183, 186 n. 3 (1st Cir. 1977) ("An affidavit may be referred to for purposes of providing particularity if the affidavit accompanies the warrant, *and* the warrant uses suitable words of reference which incorporates the affidavit." *Id.* (citation omitted) (emphasis in original)); *United States v. Weinstein,* 762 F.2d 1522, 1531 (11th Cir.1985) ("Clearly, an affidavit incorporated into a warrant by express reference attached to an accompanying a warrant can cure ambiguity in the warrant itself." *Id.* (citations omitted)); *see also*

*United States v. Leary,* 846 F.2d 592, 603 (10th Cir.1988); *United States v. Fannin,* 817 F.2d 1379 (9th Cir.1987).

We recognize that it was established at the evidentiary hearing that the affidavit itself was not attached to the warrant. However, Vetter testified that the affidavit was in his vehicle and readily accessible to the officers. At least one commentator has concluded that if the description contained in the warrant itself is inadequate, "it is appropriate to look to the description appearing in the warrant application or affidavit *if* it is clear that the executing officers were in a position to be aided by the document...." 2 W. LaFave, *Search and Seizure* § 4.5(a), p. 209 (2d ed. 1987) (emphasis in original).

It was not disputed that the warrant itself did not specifically incorporate the affidavit. However, the trial judge found that the warrant cross-referenced the affidavit. Moreover, the affidavit supplied with the warrant specifically incorporated the multi-page affidavit prepared by Vetter.

We also find that other courts have taken into account facts known by the executing officer but not specifically stated in the affidavit or warrant to validate a search. For example, in *United States v. Burke,* 784 F.2d 1090 (11th Cir.), *cert. denied,* 476 U.S. 1174, 106 S.Ct. 2901, 90 L.Ed.2d 987 (1986), the Eleventh Circuit Court of Appeals upheld a search of an apartment despite the presence of an incorrect address in the warrant. The court relied on the fact that the affiant was on the scene and pointed out the house to be searched when an error was discovered in the address. *Burke,* 784 F.2d at 1093.

In *United States v. Turner,* 770 F.2d 1508 (9th Cir.1985), *cert. denied,* 475 U.S. 1026, 106 S.Ct. 1224, 89 L.Ed.2d 334 (1986), the circuit court upheld the search of a home that was sufficiently described except for the street number. The court found that the warrant description was sufficiently particular on the basis that

[t]he verbal description contained in the warrant described the house to be

searched with great particularity; no nearby house met the warrant's detailed description; the address in the warrant was reasonable for the location intended; the house had been under surveillance before the warrant was sought; the warrant was executed by an officer who had participated in applying for the warrant and who personally knew which premises were intended to be searched; and the premises that were intended to be searched were those actually searched. *Turner*, 770 F.2d at 1511. The court concluded given those circumstances, "there was virtually no chance that the executing officer would have any trouble locating and identifying the premises to be searched, or that he would mistakenly search another house." *Id.*

In *United States v. Clement*, 747 F.2d 460 (8th Cir.1984), police officers executed a search warrant at the residence of Clement. The warrant described the premises to be searched by Clement's name and street address, and also identified it as apartment four. However, the officers searched an apartment identified as number three. Clement had previously lived in apartment number four and was residing in apartment number three when the warrant was issued. The circuit court upheld the search and stressed that the officer had been to the residence sought to be searched many times before and actually knew where the named occupant lived and went directly to his apartment in executing the warrant. *Clement*, 747 F.2d at 461. The court stated that "there is no probability of a mistaken search and we cannot conclude that the inaccurate address in the warrant should operate to invalidate the search." *Id.*

In *United States v. Gitcho*, 601 F.2d 369 (8th Cir.1979), *cert. denied*, 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979), the warrant described the premises to be searched as "4144 Geraldine, Apt. # 7, Parc Chalet Apartments, St. Louis County, Mo." However, the executing agents found no such numbered building, but rather searched the premises known as 4146 Parc Chalet, Apartment 7, St. Louis County, Mo. which was under constant surveillance before and during the warrant acquisition. The district court suppressed the evidence seized notwithstanding a finding by the district court that the officers executing the warrant had personal knowledge of the premise to be searched. On appeal, the Eighth Circuit Court of Appeals reversed and upheld the search.

The circuit court recognized that while the address was technically incorrect there were additional circumstances which supported a finding that the search was valid. First, the circuit court concluded that because the address stated in the warrant did not exist in fact there was no possibility that a mistaken search of the wrong premises was possible. *Gitcho*, 601 F.2d at 372. Second, the circuit court placed significant importance on "the fact that the agents executing the warrant personally knew which premises were intended to be searched...." *Id.* Moreover, "[t]he premises which were intended to be searched were, in fact, those actually searched." *Id.*

Against the backdrop of the cited case law, we find that the description of the property to be searched contained in the affidavit, as well as the relevant information known by the executing officers in this case, can be relied upon to validate a warrant if the description contained in the warrant itself is less than complete. Here, there is no dispute that probable cause existed to search 7609 Douglas Lake Road, the place listed in the warrant. Further, there is no dispute that the officers knew that the search was for Cabin # 3 and House B. The officers supplied the court with the description contained in the affidavit and therefore could reasonably ascertain both Cabin # 3 and House B.

Further, there was no risk here that a mistaken search of another premises was possible given the officers knowledge of the facts surrounding the nine month investigation. The officers knew that the Gahagans, for example, sold House # 4 at an earlier time and consequently did not intend to search that house nor did they search the house. Further reducing the risk of an unauthorized search of another

house is the fact that there were no other residents in the area except House B and Cabin # 3. Therefore, there was no possibility of a mistaken search of another premises.

■ Consequently, we find that when one of the executing officers is the affiant who describes the property to the judge, and the judge finds probable cause to search the property as described by the affiant, and the search is confined to the areas which the affiant described, then the search, in this case, is in compliance with the fourth amendment.

Having determined that the affidavit described Cabin # 3 with sufficient particularity, we find it unnecessary to determine whether the good faith exception of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), is applicable.

## B. *Whether the Execution of the Warrant Exceeded its Scope in Violation of the Fourth Amendment.*

Because we conclude that the description in the affidavit sufficiently described Cabin # 3, we find it unnecessary to consider appellant's claim that the execution of the warrant exceeded its scope.

## C. *Motion to Suppress the Guns and Ammunition.*

■ The appellants argue that there was error to deny their motion in limine as to the firearms and ammunition found during the search. The appellants' argument that the evidence of the firearms should have been suppressed is based upon Federal Rule of Evidence 403.

The appellants argue that the introduction of the seized firearms have limited relevance and would unduly prejudice the rights of the defendants. The appellants argue that possession of the firearms is not one of the counts contained in the indictment and that mere possession of them would unduly prejudice the defendants.

The government, on the other hand, argues that the Sixth Circuit has recognized that firearms and ammunition are tools of the drug trafficking trade and have been received as evidence in drug distribution cases. *See, United States v. Arnott*, 704 F.2d 322, 325–26 (6th Cir.), *cert. denied*, 464 U.S. 948, 104 S.Ct. 364, 78 L.Ed.2d 325 (1983); *United States v. Marino*, 658 F.2d 1120, 1122–24 (6th Cir.1981).

At the hearing, the district court weighed the question of prejudice and concluded that no such prejudice existed for mere possession of firearms in an area of Michigan where firearms were very prevalent. J.A. at 383; Tr. at 366.

We find that the appellants have failed to establish that the decision of the judge regarding the prejudicial effect of the weapons was a clear abuse of discretion. Accordingly, we affirm the district court's holding on the motion to suppress the firearms and ammunition.

## D. *Motion for Severance.*

■ The appellant Soper argues that the failure of the trial court to sever her trial with that of her co-defendants effectively precluded her from presenting the testimony of Michael and Daniel Gahagan in view of their constitutional protection.

The government asserts that the district court correctly found that the defendant Soper failed to make the requisite showing that would justify granting her motion for severance. Furthermore, the government asserts that there was no guarantee that the defendants Gahagan would testify on her behalf should there be a second trial. Moreover, the government asserts that the district court found that there was no guarantee that defendant Soper would be tried second.

The district court weighed the factors in the motion for severance and denied the motion based upon the fact that there was no guarantee that there would be a second trial or that the Gahagans would testify during that trial. Furthermore, the district court recognized that the evidence offered by the government against the Gahagans would be offered in defendant Soper's trial.

We affirm the district court's denial of the motion to sever.

### V. CONCLUSION.

For the reasons stated above, we affirm the district court's decision in its entirety.

## Appendix I