983 F.2d 1069
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Donald Ray HARRIS, Defendant-Appellant.
 No. 92-5326.
 United States Court of Appeals, Sixth Circuit.
 Dec. 8, 1992.
 
 Before BOYCE F. MARTIN and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant, Donald Ray Harris, appeals his conviction pursuant to a guilty plea to possession with intent to distribute marijuana, 21 U.S.C. § 841(a)(1), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g), based on the district court's denial of his motion to suppress evidence.
 
 I.
 
 2
 In May 1990, Detective George Nadeau of the Chattanooga Police Department received information from an informant that the defendant, Donald Ray Harris, was growing marijuana on property next to his residence and selling marijuana. The informant had, according to the officer, given reliable information in the past and had no criminal record. On August 29, 1990, the informant told Detective Nadeau that he had seen the defendant carrying marijuana to the defendant's trailer home. Nadeau personally visited the area around defendant's home, and found marijuana leaves and stalks near the home.
 
 
 3
 The next day, August 30, 1990, Detective Nadeau checked with South Central Bell Telephone Company and learned that defendant was being billed for telephone service at 9821-B Granny Walker Cemetery Road. The electric power company advised Nadeau that it furnished electric power to the defendant at 9821 Granny Walker Cemetery Road. There were actually two similar-looking trailer homes on the property at the Granny Walker Cemetery Road address. The detective obtained a warrant to search "a light colored single-wide mobile home trailer, located on the property at 9821-B Granny Walker Cemetery Road, and a wooden barn located on the same property."
 
 
 4
 The detectives executed the warrant on August 30. When the officers arrived, defendant Harris was on the porch of his mother's trailer-home at 9821-B Granny Walker Cemetery Road. When asked by Detective Nadeau where he lived, Harris pointed to the trailer next door which was the trailer Nadeau had been observing. The officers proceeded to search the defendant's trailer (9821-D Granny Walker Cemetery Road), and found marijuana and a loaded 12-gauge shotgun under defendant's bed. The officers also found pictures of growing marijuana, marijuana seeds, a telephone bill addressed to defendant at 9821-B Granny Walker Cemetery Road, and an electric bill addressed to defendant at "9821 Granny Walker Cemetery-Trailer."
 
 
 5
 The defendant was arrested, handcuffed and advised of his Miranda rights. The defendant was not questioned at that time. Defendant was then taken to the Police Services Center, and the defendant was again advised of his Miranda rights. Defendant was asked at that time if he wanted to make a statement. The defendant declined. Detective Nadeau did not ask the defendant any more questions. The defendant thereafter asked Nadeau what the charges were. Detective Nadeau replied "possession of marijuana and manufacturing marijuana under the Tennessee Code." At this point, the defendant said that he was responsible for the marijuana in his trailer but that he was not responsible for the marijuana growing in the woods. Defendant also stated that he stole the marijuana from the crop growing in the woods. Defendant also stated that next year he might have planted the seeds which were found in his trailer.
 
 
 6
 On August 14, 1991, the defendant was indicted on charges of: (1) possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a); (2) use of a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c); and (3) possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g).
 
 
 7
 On September 20, 1991, the defendant filed motions to suppress evidence arising out of the search of his home and statements made to the police. On November 21, 1991, the district court held a suppression hearing and issued an opinion denying suppression of the evidence.
 
 
 8
 During the course of a jury trial on December 12, 1991, the defendant pleaded guilty to counts 1 and 3, with the stipulation that he could appeal the district court's denial of his motion to suppress. The jury returned a verdict of not guilty on count 2.
 
 
 9
 The defendant was sentenced on February 26, 1992, to serve 60 months in prison on counts 1 and 3, the terms to run concurrently. The defendant filed a timely notice of appeal on February 28, 1992.
 
 II.
 
 10
 Defendant first contends that the district court erred in denying the motion to suppress physical evidence because the evidence was gathered pursuant to a defective warrant. The warrant specified that the place to be searched was 9821-B Granny Walker Cemetery Road when, in fact, the officers searched the trailer home located at 9821-D. Defendant contends that the warrant was deficient under the Fourth and Fourteenth Amendments which require that "no warrants shall issue [except those] particularly describing the place to be searched" because neither the warrant nor the supporting affidavit accurately described the place to be searched.
 
 
 11
 The district court, in denying the motion to suppress, held that the search was proper, even though the warrant was defective, because:
 
 
 12
 the statements made by Harris do provide a cure. When the officers arrived at Harris' home to execute the search warrant, he was seated on the front porch of his mother's home; the trailer home described in the search warrant. The defendant himself corrected the mistake in the search warrant by advising the officers that he lived in the trailer home next door at 9821-D Granny Walker Cemetery Road. At that point, the officers had the knowledge to cure any defect in the warrant.
 
 
 13
 District Court's November 26, 1991 Memorandum and Order at 5. We agree with the district court that the Fourth Amendment was not violated and the motion to suppress should be denied.
 
 
 14
 When reviewing the district court's assessment of a search warrant, and whether the warrant described the place to be searched with sufficient particularity, this court employs a de novo standard of review. United States v. Gahagan, 865 F.2d 1490, 1496 (6th Cir.), cert. denied, 492 U.S. 918 (1989).
 
 
 15
 "The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one particularly describing the place to be searched and the persons or things to be seized." Maryland v. Garrison, 480 U.S. 79, 84 (1987). The Fourth Amendment's particularity requirement "is designed to require a description which particularly points to a definitely ascertainable place so as to exclude all others." United States v. Lemmons, 527 F.2d 662, 666 (6th Cir.1975), cert. denied, 429 U.S. 817 (1976).
 
 
 16
 "[T]he test for determining the sufficiency of the description of the place to be searched is whether the place to be searched is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched." Gahagan, 865 F.2d at 1496 (quoting United States v. Gitcho, 601 F.2d 369, 371 (8th Cir.), cert. denied, 444 U.S. 871 (1979)).
 
 
 17
 The present case is notably similar to the facts before the Supreme Court in Maryland v. Garrison, supra. In that case, a search warrant specified that the officers were to search "the premises known as 2036 Park Avenue third floor apartment." Upon execution of the warrant, the officers found contraband in a third floor residence. The officers later realized, however, that there were, in fact, two apartments on the third floor, only one of which belonged to the suspect. The Court held that the seizure of the contraband from the wrong apartment was not prohibited by the Fourth Amendment.
 
 
 18
 First, the Court held that the warrant itself was valid. The Court reasoned that
 
 
 19
 if the officers had known, or even if they should have known, that there were two separate dwelling units on the third floor ... they would have been obligated to exclude respondent's apartment from the scope of the requested warrant. But we must judge the constitutionality of their conduct in light of the information available to them at the time they acted. Those items of evidence that emerge after the warrant is issued have no bearing on whether or not the warrant was validly issued.
 
 
 20
 Garrison, 480 U.S. at 85 (footnote omitted). Evaluating the warrant solely on the basis of information that the officers disclosed, or had a duty to disclose, to the magistrate, the Court concluded that the warrant was valid.[1]
 
 
 21
 Secondly, the Court held that the officers' execution of the warrant, and search of the entire third floor, was proper. The Court noted, however, that "[i]f the officers had known, or should have known, that the third floor contained two apartments before they entered the living quarters on the third floor ... they would have been obligated to limit their search to [the suspect's] apartment." Id. at 86 (emphasis added). The search conducted by the executing officers was not strictly confined by the description in the warrant because "the officers' conduct and the limits of the search were based on information available as the search proceeded." Id. at 87. In upholding the search, the Court "recognized the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants." Id.
 
 
 22
 Similarly, in the instant case, Detective Nadeau had reason to believe that the address of Harris' trailer was 9821-B, not 9821-D. The telephone and electric company records support the detective's initial belief that Harris' address was 9821-B.
 
 
 23
 Furthermore, the Court in Garrison stated that once officers begin to execute a warrant, the officers must limit their search should they come to realize that the warrant contains errors as to the description of the place to be searched. Id. The entire search, however, is not automatically invalidated. In the present case, the officers learned from the defendant that the address of his trailer was 9821-D, not 9821-B, after they began to execute the warrant. It is important to note that the detective was never confused about which of the two trailers located on the 9821 Granny Walker lot was to be searched. The only confusion was over the correct address of the defendant's trailer. According to Nadeau, he "had been observing" defendant's trailer all summer, all the while believing its address to be 9821-B. See, e.g., United States v. Gitcho, 601 F.2d at 372 (the fact that agents executing the warrant personally knew which premises were intended to be searched validated a search pursuant to a warrant which provided the incorrect address). Though the warrant incorrectly described the address of defendant's trailer, any error was remedied by the fact that the officers limited the scope of their search based on information provided by Harris at the time the warrant was executed, and the officers personally knew which premises were intended to be searched. It is clear that Garrison would validate the search and that, in any event, the entire search need not be nullified because of such minor defects in form.
 
 
 24
 This circuit has adopted a similar position. In United States v. Gahagan, this court held that a search warrant which fails to accurately describe the address of the place to be searched will not necessarily run afoul of the Fourth Amendment. Instead, the warrant may be saved where the officer takes into account facts learned while executing the warrant, though these facts were not specifically stated in the affidavit or warrant. 865 F.2d at 1497.
 
 
 25
 In Gahagan, the officers knew which house was to be searched even though the warrant specified an incorrect address. Likewise, in the instant case, the officers knew which trailer was to be searched as it was the target of an extensive investigation. The officers were merely uncertain as to the address of the defendant's trailer. Furthermore, the facts provided by Harris at the time of the search made it extremely unlikely that "a mistaken search of another premises was possible." Id. at 1498. Therefore, we hold that the search in this case complied with the Fourth Amendment. See also United States v. Clement, 747 F.2d 460, 461 (8th Cir.1984) (warrant's description of suspect's address as "apartment number four," although suspect actually resided in, and the officers searched, number three, was not fatal where the officer had been to the residence many times before and actually knew where suspect lived, and went directly to his apartment in executing the warrant).
 
 
 26
 Because the instant warrant described the defendant's residence with sufficient particularity, the good faith exception of United States v. Leon, 468 U.S. 897 (1984), is irrelevant and need not be addressed.
 
 III.
 
 27
 Defendant next contends that his voluntary confession should be suppressed because it was the fruit of an illegal search, and because it violated his Fifth Amendment rights under Miranda v. Arizona, 384 U.S. 436 (1966). Both of these arguments are meritless.
 
 
 28
 First, the argument that the confession was the fruit of an illegal search and should therefore be suppressed, pursuant to Wong Sun v. United States, 371 U.S. 471 (1963), is meritless because, as explained above, the search was constitutional.
 
 
 29
 Second, defendant contends that his confession was invalid under Miranda v. Arizona. Defendant, however, does not adequately explain how his confession violated Miranda, relying instead on broad generalizations as to why his confession was unconstitutionally obtained. We believe, however, that the officer's conduct complied with Miranda, and that the confession was admissible into evidence.
 
 
 30
 It is clear that the officer read Harris his Miranda rights immediately following his arrest. Once informed of his rights, Harris had the burden of indicating in some manner that he wished to remain silent. United States v. Alegria, 721 F.2d 758, 761 (11th Cir.1983). There is no evidence that the defendant, either expressly or impliedly, invoked his right to remain silent at that time. Since the record is devoid of any evidence that Harris asserted his right to remain silent, we believe that it was entirely proper for Detective Nadeau to resume questioning at a later time. See United States v. Cardenas Alvarado, 806 F.2d 566 (5th Cir.1986) (police may continue to question a suspect after reading the Miranda warnings where the suspect did not invoke his right to remain silent).
 
 
 31
 Moreover, even if the defendant did invoke his right to remain silent, nothing in Miranda creates a "per se proscription of indefinite duration" upon any further police questioning once the person in custody has indicated a desire to remain silent. Michigan v. Mosley, 423 U.S. 96, 102-03 (1975). In the present case, Harris was re-advised of his Miranda rights several hours after his arrest. The officer then asked him if he wanted to make a statement. The defendant declined, invoking his right to remain silent, and was asked no further questions. Harris then asked the officer what he was charged with. The officer informed him that he would be charged with marijuana offenses. The defendant then proceeded to make several incriminating statements.
 
 
 32
 "Voluntary and spontaneous comments by an accused, even after Miranda rights are asserted, are admissible evidence if the comments were not made in response to government questioning." Cannady v. Dugger, 931 F.2d 752, 754 (11th Cir.1991). This result is consistent with Miranda which prevents police from interrogating a suspect without regard to his Fifth Amendment rights. As the Miranda Court noted, police need not "stop a person [from offering] a confession.... Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." Miranda v. Arizona, 384 U.S. at 478. Because Harris' incriminating statements were not induced by police custodial interrogation, the district court properly admitted them into evidence.
 
 IV.
 
 33
 For the foregoing reasons, the district court's decision is hereby AFFIRMED.
 
 
 
 [1]
 The officers in Garrison met their duty of discovering the proper address of the place to be searched. The officers relied on telephone and electric bills which listed the suspect's address only as the "premises of 2036 Park Ave. third floor." Garrison, 480 U.S. at 85-86 n. 10. The Court concluded that it was reasonable for the officers to believe that the suspect was the only tenant on the third floor