NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0558n.06
Filed: July 1, 2005

No. 04-5679

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| J.T. SANDERS, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| MAX PARRISH, Individually & as | ) | WESTERN DISTRICT OF KENTUCKY |
| Calloway County Deputy Sheriff; DENNIS | ) | |
| McDANIEL, Individually & as Calloway | ) | |
| County Deputy Sheriff; STAN SCOTT, as | ) | |
| Calloway County Sheriff; and CALLOWAY | ) | |
| COUNTY, KENTUCKY, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

Before: COLE and SUTTON, Circuit Judges; ZATKOFF, Senior District Judge.[*]

ZATKOFF, Senior District Judge. In this 42 U.S.C. § 1983 action, Plaintiff-Appellee J.T.

Sanders ("Sanders") alleged the Defendants-Appellants violated his Fourth Amendment rights in

conducting a search of his residence. The district court denied a motion for summary judgment

based on qualified immunity filed by the individual defendants, Calloway County Deputy Sheriff

Max Parrish ("Parrish") and Calloway County Deputy Sheriff Dennis McDaniel ("McDaniel")

(collectively, the "Law Enforcement Officers"), and granted Sanders' motion for partial summary

_____

[*] The Honorable Lawrence P. Zatkoff, Senior District Judge for the Eastern District of
Michigan, sitting by designation.

judgment.

As we conclude the Law Enforcement Officers are entitled to qualified immunity, we reverse the district court's order denying qualified immunity to the Law Enforcement Officers, and we remand the case to the district court for proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

On December 31, 1998, Parrish made a routine traffic stop of Lawrence Williams. During that stop, Williams told Parrish that he had visited Sanders' home the previous night and observed numerous marijuana plants under cultivation inside the Sanders' residence. Williams visited the Sanders' home again on December 31, 1998, and saw at least 30 marijuana plants there. Williams then signed a handwritten affidavit confirming that he had seen marijuana growing in Sanders' residence. Parrish and Williams later met McDaniel at the Calloway County Sheriff's Office. Based on information provided by Williams, McDaniel prepared the search warrant and supporting affidavit forms to be signed by Parrish.

The search warrant described the premises to be searched in the appropriate section. In the section of the form intended to describe the items to be seized, the description of the premises to be searched was inadvertently duplicated. As a result, the search warrant did not include any description of the items to be seized. The same duplication of the description of the premises to be searched and omission of the items to be seized plagued the affidavit signed by Parrish. Parrish stapled his affidavit and the Williams' affidavit to the search warrant. He presented those stapled documents to the magistrate judge and told her the object of the search was marijuana. Parrish

2

stated that the magistrate judge appeared to read both affidavits attached to the search warrant and signed the search warrant. After the magistrate judge signed the search warrant, Parrish returned to the Calloway County Sheriff's Office, made copies of the search warrant and affidavits, again stapling the copies of both Parrish's affidavit and Williams' affidavit to the search warrant. Parrish then met the team of Calloway County law enforcement officers and explained to them that the object of the search was marijuana.

No one was present at Sanders' residence when the execution of the search warrant was initiated, but a woman arrived during the search. She was told that the officers were executing a search warrant and were looking for marijuana. The officer found a large quantity of marijuana in the home, as well as several firearms in plain view. Parrish was present for and had possession of the search warrant (with the attached affidavits) throughout the search. A copy of the warrant (with the attached affidavits) was left at the Sanders residence.

Sanders was charged with various offenses as a result of the execution of the search warrant. Sanders moved the Calloway County Circuit Court to suppress the evidence seized in the search, but his motion was denied. Sanders entered a conditional guilty plea and received a prison term. Sanders appealed the denial of the motion to suppress to the Kentucky Court of Appeals. The Kentucky Court of Appeals held that the search warrant was invalid because of its generality, vacated the conditional guilty plea and remanded the matter to the Calloway County Circuit Court for further proceedings. The Calloway County Circuit Court dismissed the indictment without making findings of fact or conclusions of law. Sanders then filed this civil action.

In this civil action, Sanders moved for partial summary judgment as to the liability of the

Law Enforcement Officers. Defendants-Appellants filed a motion for summary judgment seeking dismissal of all of Sanders' claims, contending that: (1) Sanders' constitutional rights had not been violated, (2) the individual defendants were entitled to qualified immunity, and (3) there was no proof in the record to support the necessary predicate for governmental liability, i.e., that the Law Enforcement Officers' conduct resulted from an official policy or custom of the County. On May 13, 2004, the district court entered an order granting Sanders' motion and denying Defendants' motion. The Memorandum and Order also granted Sanders judgment on the issue of liability against all defendants, including Sheriff Stan Scott and Calloway County (even though Sanders had not asked for the same in his motion), and stated that the only issue for trial was damages.

## II. SANDERS' CONSTITUTIONAL RIGHTS

This Court has jurisdiction to review a denial of summary judgment on the basis of qualified immunity where, as here, the denial does not turn on the existence of a genuine issue of material fact. *Skousen v. Brighton High Sch.*, 305 F.3d 520, 525 (6th Cir. 2002); 28 U.S.C. §1291. We review a district court's denial of qualified immunity on a *de novo* basis. *Skousen*, 305 F.3d at 526.

To survive a motion for summary judgment in a § 1983 action, a plaintiff must demonstrate that (1) a defendant acting under color of state law (2) took action that amounts to a constitutional deprivation (3) such that the defendant is not entitled to dismissal pursuant to the doctrine of qualified immunity. *Summers v. Leis*, 368 F.3d 881, 887-88 (6th Cir. 2004); *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). This Court generally reviews a claim for qualified immunity in two steps. First, we determine whether the plaintiff has alleged the deprivation of a constitutional right. *Wilson v. Layne*, 526 U.S. 603, 609 (1999). If he has, we then must determine whether that right was clearly

established at the time of the alleged deprivation such that a reasonable person would know that his conduct was in violation of that right. *Id.*

The Fourth Amendment of the United States Constitution requires that a warrant "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Generally, the requirement of specificity in the description of the place to be searched and the persons or things to be seized is fulfilled by an adequate description on the face of the search warrant. On numerous occasions, however, this Court has recognized that even though the search warrant itself lacks sufficient particularity regarding the place to be searched or the persons or items to be seized, such warrant may still yield a constitutionally valid search based on the principle of "cure by incorporation." *See, e.g., United States v. Blakeney*, 942 F.2d 1001 (6th Cir. 1991); *United States v. Gahagan*, 865 F.2d 1490 (6th Cir.), *cert. denied*, 492 U.S. 918 (1989). *See also United States v. Brown*, 49 F.3d 1162 (6th Cir.), *cert. denied*, 516 U.S. 942 (1995).

The district court held that the search warrant in this case was constitutionally defective based on the U.S. Supreme Court's recent decision in *Groh v. Ramirez*, 540 U.S. 551 (2004) (which was issued after the parties briefed their motions in district court but before the district court rendered its decision). Groh was an agent with the Bureau of Alcohol, Tobacco and Firearms who received information that illegal firearms and other explosive materials were concealed at the Ramirez ranch. In preparing the warrant, Groh failed to identify the items he intended to seize, mistakenly repeating the description of the premises to be searched. When obtaining a magistrate judge's signature on the search warrant, Groh presented the magistrate with the search warrant form and his affidavit. The Groh warrant neither incorporated any other document by reference, nor were

5

any documents attached to the warrant. During a fruitless search of the Ramirez ranch, Groh took only the warrant to the scene (but not his affidavit, which was under seal).

The Supreme Court held that a deficient warrant could not be "cured by incorporation" when the warrant neither referenced the curative document, nor was the curative document attached to the warrant. *Groh*, 540 U.S. at 558. The *Groh* majority also rejected Groh's contention that his affidavit saved the search warrant from a lack of particularity, stating that the Fourth Amendment existed not only to prevent general searches but to assure "the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *Id.* at 561 (citation omitted). As Groh's search warrant application and affidavit did not accompany the officers to the scene, neither the warrant application and affidavit nor the limiting description of the items to be seized were available to the property owners during the search. This Court also recently addressed the applicability of the cure by incorporation principle. *See Baranski v. Fifteen Unknown Agents of the Bureau of Alcohol, Tobacco and Firearms*, 401 F.3d 419 (6th Cir. 2005). In *Baranski*, this Court refused to apply the cure by incorporation principle in a case where the facts paralleled those in *Groh*. Specifically, in *Baranski*, the underlying affidavit was not attached to the warrant and was not available at the scene because it was under seal. These facts were critical to the *Baranski* court's decision, as evidenced by the following statement (which first discusses the *Groh* decision and then applies the *Groh* decision to the facts in *Baranski)*:

> It was not sufficient for Agent Groh to be subjectively aware of the particulars contained in the affidavit; those particulars had to be communicated through the warrant to Ramirez. . . . . It follows, *a fortiori*, that it was not sufficient for Agent Johnson to be aware of

6

the limits on his lawful authority under the warrant. Those particulars had to be communicated to the manager of [plaintiff] through the warrant or an attachment to the warrant. It is undisputed that they were not because, as in *Groh*, the affidavit that contained the particulars did not accompany the warrant at the time of the search and seizure.

*Baranski*, 401 F.3d at 429 (citations omitted).

We conclude that the *Groh* and *Baranski* decisions do not govern the instant case. First, neither the *Groh* court nor the *Baranski* court invalidated the cure by incorporation principle. In fact, the *Groh* court stated:

We do not say that the Fourth Amendment forbids a warrant from cross-referencing other documents. Indeed, most courts of appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant. . . . But in this case the warrant did not incorporate other documents by reference, nor did either the affidavit or the application (which had been placed under seal) accompany the warrant. Hence, we need not further explore the matter of incorporation.

*Groh*, 540 U.S. at 557-58 (citations omitted). Similarly, the *Baranski* decision leaves open the possibility, even the likelihood, that the application of the cure by incorporation principle would be proper in a case such as this, where the premises to be searched and the items to be seized are communicated to the search subject in the warrant and attachments to the warrant.

Second, unlike in *Groh* and *Baranski,* the curative documents in this case were attached to the warrant during the search. Accordingly, an analysis of the cure by incorporation principle is appropriate. This Court has broadly interpreted the cure by incorporation principle and generally

7

permitted it where an affidavit or other supporting document is incorporated by reference in the warrant and accompanies the warrant. In *Blakeney*, 942 F.2d at 1023-24, this Court held that an expressly incorporated affidavit that references a second affidavit authored by the same affiant, a law enforcement officer, was sufficient for incorporation of both documents:

> We acknowledge that the clearest indication of incorporation of both affidavits would have resulted had the magistrate referenced both of them. Notwithstanding this fact, we believe that Agent Sadowski's incorporation of the August 19 affidavit in paragraph 2 of the August 21 affidavit and the magistrate's explicit incorporation of the August 21 affidavit (in which the August 19 affidavit was incorporated and attached) were sufficient.

*Id.* at 1024.

In *Gahagan*, this Court found that (1) the warrant in that case insufficiently described the premises to be searched, (2) the warrant did not specifically incorporate the underlying affidavit, and (3) the affidavit was not attached to the warrant. *Gahagan*, 865 F.2d at 1497. Nevertheless, this Court held that the defective warrant was cured not only by reference to the affidavit, which was available at the scene, but also by facts known to the executing officer that were not specifically stated in the affidavit or warrant. *Id.* at 1498. The *Gahagan* court also emphasized that the applicant officer was at the scene and the supporting affidavit was available throughout the search; as such, there was little danger that the officers misunderstood the scope of their authority.

We conclude that the affidavits of Parrish and Williams were sufficiently incorporated into the warrant to search the Sanders' residence. The facts of this case closely resemble those in *Blakeney*, and they provide a greater justification for the application of the cure by incorporation principle than the facts in *Gahagan*. The search warrant obtained by Parrish incorporates his

8

affidavit on its face ("that there is probable and reasonable cause for the issuance of this Search Warrant as set out in the affidavit attached hereto and made a part hereof as if fully set forth herein"). Parrish's affidavit then references Williams' affidavit, the curative document ("Larry Williams . . . an adult, who inside the residence, and did give this officer an affidavit to this effect."). While Parrish's specifically incorporated affidavit does not clearly incorporate Williams' affidavit, the *Blakeney* court clearly ruled that where the curative affidavit is not expressly incorporated in the warrant but is referenced in another incorporated affidavit, the warrant should be read in light of both affidavits. *Blakeney*, 942 F.2d at 1024.

In addition, the curative documents describe with particularity the items to be seized. The Williams affidavit, upon which the Parrish affidavit expressly relied, specifically stated that he had seen marijuana plants growing in Sanders's home. This description remedies the deficient description of the items to be seized in the search warrant, as it makes clear that marijuana plants were the items to be seized ("I saw what appeared to be at least 30 marijuana plants. I have seen marijuana plants before. These are definitely marijuana plants.").

### III. CONCLUSION

For the reasons stated, we hold that the cure by incorporation principle operates to remedy the deficiencies on the face of the search warrant obtained by Parrish. Therefore, we hold that the Law Enforcement Officers did not violate the Fourth Amendment rights of Sanders in executing the search warrant at issue in this case. We therefore reverse the district court's denial of qualified immunity to the Law Enforcement Officers. The case is remanded to the district court for proceedings consistent with this opinion.

9