UNITED STATES of America

v.

**Larry Winston DODD**

**No. A–04–CR–119–LY.**

United States District Court,
W.D. Texas,
Austin Division.

Dec. 21, 2004.

Paul J. Goeke, Attorney at Law, San Antonio, Leon J. Grizzard, Attorney at Law, Austin, TX, for Larry Winston Dodd (1), defendant.

Grant Sparks, Texas Attorney General's office, Austin, TX, for U.S.

## ORDER

YEAKEL, District Judge.

Defendant Larry Winston Dodd is charged by a one-count indictment with the offense of using a computer with Internet access, to knowingly attempt to persuade, induce, entice, and coerce an individual under the age of eighteen in sexual activity for which he could have been charged with a criminal offense, including under Texas law, attempted sexual assault and attempted indecency with a child. *See* 18 U.S.C. § 2422(b); Tex. Penal Code Ann. § 22.011 (West Supp.2004–05) (sexual assault); Tex. Penal Code Ann. §§ 15.01, 21.11 (West 2003) (criminal attempt, indecency with a child). Before the Court are the following motions and responses: Defendant Dodd's Motion To Suppress Evidence (Clerk's Document No. 13), Defendant's Motion To Suppress Search Based Upon Warrant # 1 (Clerk's Document No. 26), Defendant's Motion To Suppress Search Warrant # 2 (Clerk's Document No. 34), Defendant's Motion To Suppress Search Warrant # 3 (Clerk's Document No. 36), the Government's Memorandums Of Law In Opposition To Defendant's Motions To Suppress (Clerk's Document Nos. 33 and 40), the Government's letter brief dated September 13, 2004 (Clerk's Document No. 44) and Dodd's letter brief dated October 4, 2004 (Clerk's Document No. 46). On September 8, 2004, this Court held a hearing on Dodd's motions to suppress. The evidence at the hearing consisted of testimony from Sergeant Katherine Smith, an investigator with the Texas Attorney General's Office, transcripts of electronic communications between Smith and Dodd, in which Smith represented herself as a fourteen-year-old girl named "Shelly Wright," and a photograph of Dodd's pickup truck.

By his motions, Dodd seeks to suppress evidence discovered by police officers during searches conducted pursuant to warrants of a hotel room registered in his name, his residence in Port Lavaca, Texas, and his computer, which was located in his residence. Dodd contends that because the affidavit supporting the initial warrant for the hotel room failed to contain sufficient reliable information upon which the reviewing magistrate could base a reasonable belief that evidence of the charged offense would be found in the listed hotel room, the search of the hotel room was improper, and evidence recovered therein should be suppressed. Additionally, Dodd contends that the good-faith exception to the exclusionary rule, as announced in *United States v. Leon*, 468 U.S. 897, 923, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), does not apply, that the search of the hotel room was improper, and evidence recovered in the search should be suppressed. Finally, Dodd contends that because the search warrant for the hotel room was invalid due to a lack of probable cause and

because the subsequent search warrants for his residence and his computer were based in part on evidence obtained during the improper search of the hotel room, evidence recovered in those searches is fruit of a poisonous tree and should also be suppressed. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

After considering Dodd's motions, the evidence presented at the hearing, the Government's responses, the arguments of counsel, the parties' post-submission letters, and the applicable law, this Court concludes that the good-faith exception to the exclusionary rule applies and Dodd's motions to suppress should be denied.

## BACKGROUND

At the suppression hearing, Smith, a licensed Texas Peace Officer and an investigator with the Cyber Crimes Unit of the Texas Attorney General's Office, testified about the unit's investigation of Dodd. On December 4, 2003, at 1:30 p.m., while in the Attorney General's undercover computer laboratory, she signed on to the Internet Yahoo! chat group Texas 14, as "ShellyWright 14." She created a fictitious Yahoo! account profile for "Shelly Wright," which represented that Wright was a fourteen-year-old single female student.[1] Upon entering the chat group, she simply "sat," such that online it appeared as if Wright was present in the chat group but not engaged in conversation with any other members of the group. At 1:42 p.m., Wright received a message from "doilarry1_."[2] Smith testified that later, through Dodd's emails and his driver's license records, she was able to confirm that this was the screen name Dodd used when communicating online with Wright. The chat logs, which were admitted as evidence at the hearing, show that Dodd and Wright communicated via computer using instant messaging and email on nine days between December 4, 2003, and March 3, 2004. Dodd's initial online communication with Wright, as well as most of his other communications with her, involved conversation about sex or sexual acts. During his initial communication on December 4, Dodd asked Wright if she was a virgin and if she was curious about sex. He also asked her when she would be fifteen, to which Wright responded, "in 15 days." Dodd asked Wright for a picture, and Smith responded by emailing Dodd a picture of a fully clothed young girl sitting on a couch with a dog, which Smith testified is a photograph often used in this type of undercover operation. A photograph of Dodd's face appeared on his Yahoo! profile. Also on December 4, Dodd emailed two pictures to Wright and told her that each one was of himself with an erect penis. In other online conversations, Dodd and Wright arranged to meet in Bastrop, Texas on January 6. Dodd failed to appear for their meeting and explained later that he was unable to make the meeting because he had been in the hospital. At Wright's suggestion, a second meeting was arranged at the Jack In The Box in Buda, Texas; however, Dodd failed to appear for that meeting as well. On March 1, 2004, in an online conversation, Dodd and Wright arranged a third meeting for Wednesday, March 3 at 10:30 a.m. at the Jack In The Box in Buda. In his March 1 online communication, Dodd told Wright

---

1. When discussing internet conversations, "Wright" will be used to identify the fictitious "Shelly Wright" with the email address of "ShellyWright14" created by Smith.

2. The evidence presented at the September 8, 2004 hearing conclusively established that "doilarry1_" was an internet name used by Dodd. For clarity this Court will use "Dodd" to identify the Defendant.

that he would get a hotel room in San Marcos, Texas, pick her up at the Jack In the Box, and that they would go to the hotel room and have sex. He told Wright that he would bring condoms, lubricant, alcoholic beverages, and bubble bath to the hotel. Dodd told Wright that he would be driving a green F–150 pickup truck and she would be able to recognize him at the Jack In The Box from the picture posted on his Yahoo! profile.

On March 3 at 10:30 a.m., Smith and other police officers waited in an HEB parking lot adjacent to the Jack In The Box in Buda. Smith identified Dodd as he arrived at the Jack In The Box driving a green F–150 pickup truck. The other police officers immediately arrested Dodd. According to Smith, before giving Dodd his *Miranda* warnings[3] and as the officers searched Dodd incident to his arrest, the officers removed a hotel room key from Dodd's pocket and asked him where was the hotel room. Dodd responded that the hotel room was at the Stratford Inn in San Marcos.

Based on the information Smith obtained through her undercover investigation and the events at the Jack In The Box, she prepared a search-warrant affidavit on March 3 for room 114 of the Stratford Inn in San Marcos. Although, it is unclear from Smith's affidavit and from her testimony at the suppression hearing, the Court assumes that police officers learned from employees of the Stratford Inn that Dodd was registered for room 114. Smith presented her affidavit to the Honorable Howard Warner, Judge of the County Court At Law No. 1 of Hays County, Texas, and he signed the search war-

rant that afternoon. Smith, along with other police officers, executed the warrant and recovered from the hotel room one unopened box of Magnum condoms, one tube of K–Y Jelly personal lubricant, one unopened box of Trojan ENZ condoms, one unopened box of Durex condoms, four bottles of TGIF Pina Colada alcoholic beverage, two small bottles of Red Label scotch, one bottle of Lander Aloe Vera bubble bath, and an 8–1/2″ × 11″ color photograph of the file "Shelly.jpg."[4]

After executing the search warrant, Smith drafted an affidavit seeking a search warrant for Dodd's Port Lavaca residence. The Honorable Alex Hernandez, Judge of the County Court at Law of Calhoun County, Texas, signed a search warrant authorizing officers to search Dodd's residence. Based on what the officers recovered in their search of Dodd's residence, on March 5 Smith drafted an affidavit seeking a search warrant for Dodd's computers and diskettes seized from the residence. The Honorable Julie Kocurek, Judge of the 390th District Court of Travis County, Texas, signed a search warrant authorizing officers to search the seized computers and diskettes.

## ANALYSIS

### Search of hotel room

Dodd contends initially that the evidence seized in the March 3 search of room 114 of the Stratford Inn must be suppressed because Smith's supporting affidavit failed to establish probable cause to believe that evidence of criminal activity would be found in this particular hotel room. Dodd contends that Smith's supporting affidavit is deficient because it lacks any facts that

**3.** *See Miranda v. Arizona,* 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**4.** "Shelly.jpg" is the name of the computer file that was attached to an email Smith sent

to Dodd on December 4, 2003. The file consisted of the picture of a young girl sitting on a couch with a dog.

state why she believed room 114 was registered to Dodd, or alternatively, that the affidavit lacks any information establishing a nexus between room 114 and the evidence Smith believed would be recovered there. Further, Dodd contends that the good-faith exception does not apply because the warrant fails to provide any indicia of probable cause to search room 114, and that Judge Warner must have abandoned his neutral, disinterested judicial role when issuing the warrant. Finally, Dodd contends that the good-faith exception to the exclusionary rule does not apply because Smith knew that police officers found the hotel room key in Dodd's pocket pursuant to their search incident to Dodd's arrest, asked him where the hotel room was, and Dodd told them, all while Dodd was under arrest but before he was given his *Miranda* warnings.

The Government disagrees with Dodd's contentions and responds that the affidavit is facially valid and that the facts alleged therein provided probable cause to search the hotel room. Additionally, the Government contends that if the affidavit was insufficient because it failed to provide a substantial basis for probable cause to issue the warrant, the good-faith exception to the exclusionary rule applies and the motion to suppress evidence recovered in the hotel room should be denied.

### Supporting affidavit for hotel-room search warrant

Smith's affidavit describes the place to be searched as "1601 IH 35 North, Room # 114, San Marcos, Hays County, Texas 78666." Smith further describes the Stratford Inn and the location of room 114 with particularity. Smith states that it is her belief that, among other things, cameras, photographs, computer files, condoms, lubricant, alcoholic beverages, and bubble bath, business records, and documents referencing Wright or Larry Dodd would be found in room 114. In the probable-cause portion of the affidavit, Smith describes her specialized background and training regarding the seizure and analysis of computer equipment and the investigation of crimes committed using the Internet. Among other things, she notes that she is a certified and licensed Texas Peace Officer with over eight years of law enforcement experience and is currently assigned to the Cyber Crimes Unit of the Texas Attorney General's Office. Her work for the Attorney General has focused exclusively on child-exploitation crimes. The vast majority of the investigations in which she has participated have involved the use of computers and the Internet to facilitate child exploitation crimes.

Regarding the investigation of Dodd, her affidavit explains that while in the Cyber Crimes Unit's undercover computer laboratory on December 4, 2003, at 1:30 p.m., she accessed the Internet and signed on to "www.yahoo.com." Smith states that she uses an undercover account to access chat groups and rooms. In this session, Smith posed as a fourteen-year-old female named Wright. Smith describes the Yahoo! profile she established as Wright which indicates that Wright would be fifteen years old the next month. Smith explained chat groups and stated that on December 4, posing as Wright, she joined the Yahoo! "Texas 14" chat group. After joining the group, Smith stated that the name "ShellyWright14" appeared on the chat group user list. The list shows all the members currently in the chat room. Smith did not initiate online contact with any members and simply left "ShellyWright14" signed on to the chat group list.

On December 4 at 1:42 p.m., Smith received an unsolicited online individual message from Dodd that stated, "excuse me, r

u busy?"[5] Smith's affidavit explained that others in the chat room are unable to access or view such an individual message and that this type of message can only be viewed by the two members communicating with each other. Smith's affidavit continues, and states that at 1:43, Dodd asked Wright if she was fifteen to which Wright replied that she was fourteen. During this chat session, Dodd asked Wright for a picture. Smith stated that she sent a picture "depicting a thirteen-year-old white female used for undercover purposes" to Dodd via email. After receiving the picture, Dodd wrote "shelly your so cute." Smith stated that she viewed the Yahoo! Instant Messenger profile for doilarry1__. Smith's affidavit also describes several sexually explicit communications between she and Dodd. She notes that on December 4 at 1:53 p.m. Dodd writes Wright, "I have dated 16 before" and "I like to teach young lady." At 1:58 p.m., Dodd asks Wright what grade she is in and she replies that she is in the 9th grade. At 2:50 p.m. Dodd writes, "if we stay friends I will show u things sometime w.o intercourse." At 2:56 p.m. Dodd sent Wright two pictures via email; the first "depicts a male lying on his back holding his erect penis" and the second "depicts a nude male standing with a semi-erect penis apparently masturbating." At 2:57 p.m. Dodd writes Wright that the pictures were of himself. Wright and Dodd had several instant messaging conversations between December 4 and March 1, 2004. On several occasions Dodd told Wright that he would "teach" her about sex. On December 8, Dodd writes to Wright and asks about possibly meeting in person. During the conversations, Dodd asks Wright if he could meet her and engage in sexual conduct. Smith, as Wright, responded that

she had not had sex before. During this conversation, Dodd asked Wright to engage in sexual contact and sexual intercourse. Smith's affidavit describes Dodd's plan that he communicated to Wright as follows:

> Dodd would obtain a hotel room in San Marcos and that on Wednesday, March 3, 2004, he would meet her at the Jack In The Box in Buda, Texas. [Dodd] told [Wright] that they would then return to the hotel room to engage in sexual intercourse. [Dodd] told [Wright] that he would bring condoms, lubricant, alcoholic beverages, and bubble bath to the meeting.

Smith also stated that as "defined by Texas Penal Code section 21.01, sexual contact is defined as any touching of the anus, breast, or any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person. Sexual intercourse is defined as any penetration of the female sex organ by the male sex organ." Smith stated that she has saved all of the profiles, chat logs and photographs and placed them in the investigative case file. Further Smith states,

> On Wednesday March 3, [Dodd] arrived at the predetermined location intending to meet and engage in sexual conduct with whom he believed was a minor female child. After positive identification by [Smith], [Dodd] was immediately arrested. [Dodd] was driving a green 1997 Ford F150 automobile; TX LP # 9PTV07. [Dodd] was read his Miranda Warning and requested that a lawyer be present prior to being questioned.

Smith stated that she did not question Dodd. Dodd's vehicle was inventoried and

---

**5.** Throughout these exchanges, Dodd used his internet name, "doilarry1_." *See supra* note

2.

seized. In the rear floor of the truck, a color photograph depicting a nude male with an erect penis was found. The photograph was identical to the first one sent to Wright by Dodd as doilarry1_ on December 4, 2003.

Smith stated that from her experience and training, she "knows that persons who use personal computers tend to retain their personal files and data for extended periods of time, months or even years." Smith stated that she knows personal-computer users transfer most of their data to new computers when making an upgrade. Finally, she stated,

> based on all the foregoing, there is probable cause to believe that evidence and instrumentalities in violation of Texas Penal Code Section 22.011 Criminal Attempt–Sexual Assault of a Child are contained, concealed, or maintained in files, electronic or otherwise, correspondence, notes, papers, ledgers, personal telephone and address books, maps, memoranda, telexes, facsimilies, documents or concealed in equipment located at 1601 IH 35 North, Room # 114, San Marcos, Hays County, Texas 78666.

Judge Warner signed the search warrant, and Smith and other police officers executed the warrant the afternoon of March 3. From room 114 of the Stratford Inn in San Marcos, they recovered one unopened box of Magnum condoms, one tube of K–Y Jelly personal lubricant, one unopened box of Trojan ENZ condoms, one unopened box of Durex condoms, four bottles of TGIF Pina Colada alcoholic beverage, two small bottles of Red Label scotch and one bottle of Lander Aloe Vera bubble bath.

### Applicable law

Certain fundamental principles apply when a defendant argues that evidence, seized upon the execution of a search warrant, must be suppressed because the supporting affidavit did not establish the existence of probable cause. The Fourth Amendment, which provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation," requires that probable cause be determined "by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out federal crime." U.S. Const. amend. IV; *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948). In order for a magistrate to perform his official function, the affidavit must contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant. *Whiteley v. Warden,* 401 U.S. 560, 564, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). Probable cause has been defined as "only a probability, and not a *prima facie* showing, of criminal activity." *Illinois v. Gates,* 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). A warrant must be upheld as long as the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing. *Id.* at 238–39, 103 S.Ct. 2317. To justify a search, the circumstances must indicate why evidence of illegal activity will be found in a particular place; the affidavit must connect the place to be searched with the illegal activity and the evidence sought. *United States v. Pace,* 955 F.2d 270, 276–77 (5th Cir.1992). This nexus may be established "through normal inferences as to where the articles sought would be located." *Id.* at 277 (quoting *United States v. Freeman,* 685 F.2d 942, 949 (5th Cir.1982)).

In reviewing suppression motions, courts have the discretion to proceed directly to an analysis of the good-faith exception to the exclusionary rule announced in *United States v. Leon,* without first addressing the underlying Fourth Amend-

ment question. 468 U.S. at 924–25, 104 S.Ct. 3405. In the Fifth Circuit, generally, a search warrant is reviewed in two stages. *See United States v. Payne*, 341 F.3d 393, 399 (5th Cir.2003). First, a court determines whether the good-faith exception to the exclusionary rule applies. *Id.* If it does, the court need not reach the question of probable cause for the warrant unless it presents a "novel question of law, resolution of which is necessary to guide future action by law enforcement officers and magistrates." *Id.* Due to the facts peculiar to this case, the Court will first review the Fourth Amendment question, determining whether the affidavit on its face established a *substantial basis* for probable cause to search room 114, and will then proceed to determine whether the good-faith exception applies.

**Substantial basis for probable-cause finding by magistrate**

■ When determining whether Smith's affidavit established probable cause to believe evidence of a crime would be found in room 114, Judge Warner was required to review the totality of the circumstances in a practical and common sense fashion. *See Gates*, 462 U.S. at 230–31, 103 S.Ct. 2317; *Pace*, 955 F.2d at 277. What is required before a magistrate issues a warrant is that the magistrate must conclude that the facts and circumstances described in the affidavit would warrant a person of reasonable caution to believe that the articles sought were located at the place proposed to be searched. *See Pace*, 955 F.2d at 276. In the review of the search at issue, this Court affords deference to Judge Warner's finding of probable cause and his finding will be sustained should this Court determine it was a doubtful or marginal decision. *See Gates*, 462 U.S. at 236, 103 S.Ct. 2317. Where oral testimony was not presented to the reviewing magistrate, as in this case, the existence of probable cause to support a warrant must be ascertained exclusively from the four corners of the affidavit. *See Whiteley*, 401 U.S. at 565 n. 8, 91 S.Ct. 1031.

This Court finds that although Smith's affidavit describes the particular place to be searched in detail, the affidavit failed to provide Judge Warner with any necessary facts from which he could infer that Dodd was associated with room 114 of the Stratford Inn or any facts from which he could infer that evidence of the offense charged would be found in that particular hotel room or even in that hotel. Smith's affidavit mentions only that Dodd said that he would "get a hotel room in San Marcos." The affidavit provides no facts that link Dodd to room 114 or a particular hotel, nor any information from which such an inference could be drawn. Although Smith testified at the suppression hearing that police officers located a key in Dodd's pocket during their search incident to his arrest that Dodd identified as belonging to the Stratford Inn, Smith failed to include this information in her search-warrant affidavit. Specifically, the affidavit fails to provide a link between Dodd and room 114 at the Stratford Inn. The affidavit adequately describes the hotel and room and asserts that "Larry Winston Dodd" is in charge of and controls the room. The affidavit also specifically describes the items expected to be found in the room and indicates that some of the items sought may "reference … doilarry1_, or Larry Dodd." In setting forth her probable cause for issuance of the warrant, Smith recites many of the facts known to her concerning the internet correspondence between Dodd and Wright, but fails to ever mention Dodd by name, referring to him only as "Suspect/doilarry1_." Her description of the "Yahoo Instant Messenger profile" for "Suspect/doilarry1_" reflects the "Real Name" of the suspect as only "Larry." In

describing the circumstances of Dodd's arrest, she refers to him only as "Suspect/doilarry1_." In no place does the affidavit state that the "Larry Winston Dodd" alleged to control room 114 of the Stratford Inn in San Marcos is the same person as "Suspect/doilarry1_," suspected of child exploitation crimes, who, when arrested in Buda had on his person a room key for the Stratford Inn in San Marcos. Without this affirmative link in the affidavit, probable cause cannot exist to search the specific place described in the affidavit. To rule otherwise could foreseeably lead to the validation of search warrants for random locations in no way factually associated with a suspect, but which law enforcement officers only have a mere surmise or suspicion that the suspect may have visited. The Constitution requires more.

This Court does not doubt that Smith possessed the necessary information to obtain a valid search warrant. However, she failed to present it to the issuing magistrate either by affidavit or by direct oral statement. It is the finding of this Court that Smith's affidavit lacked facts necessary to link Dodd and the evidence of the offense charged, which Smith was seeking, to room 114 of the Stratford Inn in San Marcos, and further that Judge Warner's finding of probable cause to issue the warrant was without a substantial basis. *See Gates*, 462 U.S. at 238–39, 103 S.Ct. 2317 (task of issuing magistrate is to determine, given all circumstances set forth in affidavit, whether fair probability exists that evidence of crime will be found in particular place; task of reviewing court is to ensure that substantial basis existed for magistrate's probable-cause finding).

### Good-faith exception

██  Although this Court has determined that the search warrant lacked a substantial basis for Judge Warner's probable-cause finding, the evidence seized from the hotel room need not be suppressed if the executing police officer acted with an objective good-faith belief that the warrant was properly issued by a neutral magistrate. *See Leon*, 468 U.S. at 922, 104 S.Ct. 3405.

██  *United States v. Leon* stands for the principle that courts should not render inadmissible evidence obtained by police officers who acted in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause. *Id.* at 923, 104 S.Ct. 3405. The *Leon* good-faith exception requires suppression "only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id.* at 926, 104 S.Ct. 3405. The *Leon* court outlined four instances when the good-faith exception cannot apply and evidence will be excluded: (1) the affidavit contained materially false information that the officer affiant either knew was false or would have known was false if he or she had not been reckless; (2) the magistrate abandoned his neutral role in evaluating the affidavit; (3) the affidavit is so lacking in indicia of probable cause as to render the officer's belief in its existence entirely unreasonable; or (4) the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid. *Id.* at 923–25, 104 S.Ct. 3405. The Court noted that the purpose of the exclusionary rule is to deter unlawful police misconduct; therefore, when officers engage in "objectively reasonable law enforcement activity" and have acted in good faith when obtaining a search warrant from a judge or magistrate, the good-faith exception applies. *Id.* at 919–20, 104 S.Ct. 3405.

Dodd contends that the good-faith exception does not apply because the warrant fails to provide any indicia of probable cause to search a particular room in a particular hotel, and that Judge Warner must have abandoned his neutral, disinterested role when issuing this warrant. Finally, Dodd contends that the good-faith exception to the exclusionary rule does not apply because the police officers found the hotel room key in Dodd's pocket pursuant to their search incident to Dodd's arrest, asked him where the hotel room was, and Dodd told them, all while Dodd was under arrest but before he was given his *Miranda* warnings.

In considering whether the good-faith exception applies, this Court does not attempt an "expedition into the minds of police officers" to determine their subjective belief regarding the validity of the warrant. *Id.* at 922 n. 23, 104 S.Ct. 3405. Rather, this Court's inquiry is "confined to the objectively ascertainable question of whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* In determining whether the good-faith exception applies, the court examines the affidavit and may also consider all of the circumstances surrounding the issuance of the warrant. *See Payne,* 341 F.3d at 400 (citing *Leon,* 468 U.S. at 922, n. 23, 104 S.Ct. 3405).

### Exceptions to good-faith exception

### 1. Affidavit lacks indicia of probable cause

First, this Court addresses whether Smith's affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon,* 468 U.S. at 923, 104 S.Ct. 3405.

Smith's affidavit is not a "bare-bones" affidavit.[6] Despite the affidavit's deficiencies in linking room 114 of the Stratford Inn to Dodd and criminal activity, it was not unreasonable for Smith to believe that what she wrote in the affidavit would be sufficient to support a finding of probable cause. Additionally, when evaluating whether to apply the good-faith exception, this Court considers Smith's personal knowledge regarding the investigation and the circumstances surrounding the issuance of the warrant. *See Payne,* 341 F.3d at 402. The affidavit contained sufficient indicia of probable cause to enable a reasonable officer to execute the warrant thinking it valid. *See United States v. Martin,* 297 F.3d 1308, 1315 (11th Cir. 2002) (citing *United States v. Hodge,* 246 F.3d 301, 309 (3rd Cir.2001)) ("At a minimum the affidavit was not clearly lacking in indicia of probable cause, but presented a close call. Once the magistrate judge made that call, it was objectively reasonable for the officers to rely on it.").

### 2. Reviewing magistrate abandoned his judicial role

Next the Court addresses Dodd's contention that the good-faith exception does not apply because Judge Warner must have wholly abandoned his judicial role by finding that Smith's affidavit provided probable cause to issue the search warrant. A search warrant must be reviewed by "a neutral and detached magistrate" before it can be executed. *Coolidge v. New Hampshire,* 403 U.S. 443, 450, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). This separate review by a member of the judiciary protects individuals from the sometimes "hurried judgment of a law enforcement officer engaged in the often

---

**6.** An affidavit is "bare bones" if it is so deficient in demonstrating probable cause that it renders an officer's belief in its existence

completely unreasonable. *See United States v. Craig,* 861 F.2d 818, 821 (5th Cir.1988).

competitive enterprise of ferreting out crime" and serves as "a more reliable safeguard against improper searches." *Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, 326, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979). "The courts must ... insist that the magistrate purport to perform his neutral and detached function and not serve merely as a rubber stamp for the police" in determining whether a warrant contains sufficient probable cause. *Leon*, 468 U.S. at 914, 104 S.Ct. 3405. A judge can be said to act as a mere "rubber stamp" if he solely relies upon the fact that police officers are asking for the warrant. *Martin*, 297 F.3d at 1317. "Whatever else neutrality and detachment might entail, it is clear that they require severance and disengagement from activities of law enforcement." *Id.* (quoting *Shadwick v. City of Tampa*, 407 U.S. 345, 350, 92 S.Ct. 2119, 32 L.Ed.2d 783 (1972)).

There was no evidence presented at the suppression hearing indicating that Judge Warner wholly abandoned his judicial role. Nothing before this Court indicates that Judge Warner failed to read the affidavit or that he issued the warrant solely relying on the fact that Smith asked for it. Further, this Court declines to infer that because Judge Warner's probable-cause finding lacked a substantial basis, his act of issuing the warrant was a "rubber stamp." *Martin*, 297 F.3d at 1318 (citing *United States v. Tagbering*, 985 F.2d 946, 951 (8th Cir.1993)). This Court concludes that there is no evidence that Judge Warner wholly abandoned his judicial role when issuing the search warrant for room 114.

### 3. Omission of information from affidavit

█ The good-faith exception does not apply when an affiant omits information in her possession that would have *weakened* the case against the defendant. *See United States v. Davis*, 226 F.3d 346, 351 (5th Cir.2000). Here the omission would have *strengthened* the case against Dodd. Any omission must be of information that is not only relevant, but dispositive, so that if the omitted facts had been included in the affidavit, there would not be probable cause. *Davis*, 226 F.3d at 351.

At the suppression hearing, Smith testified that, to the extent she omitted information linking Dodd to room 114 of the Stratford Inn, it was a mere oversight. There exists no evidence that Smith deliberately or recklessly misled Judge Warner in any manner by omitting information from her affidavit. Further, there is no evidence nor any indication that Smith *intentionally* omitted facts that would have *defeated* a finding of probable cause. On the contrary, the facts Smith omitted would have provided additional support for the issuance of the warrant. *See Martin*, 297 F.3d at 1320.

### Reasonable reliance on warrant

Having determined that none of the exceptions to the *Leon* good-faith exception apply, the Court reviews whether Smith reasonably relied upon the search warrant. The good-faith exception requires the court to consider objectively whether a reasonably well-trained officer would know that the warrant was illegal despite the magistrate's authorization. *Leon*, 468 U.S. at 922 n. 23, 104 S.Ct. 3405. The question arises whether this Court may consider information outside the four corners of the affidavit that was known to Smith and not presented in the affidavit.

The Fifth Circuit holds that in determining whether the good-faith exception applies, the reviewing court may consider "the affidavit and the circumstances surrounding issuance of the warrant." *Payne*, 341 F.3d at 402. Further, a majority of circuits have taken into consideration

facts outside the affidavit when determining whether the *Leon* good-faith exception applies. *See United States v. Martin,* 297 F.3d 1308, 1319 (11th Cir.2002) (citing *United States v. Marion,* 238 F.3d 965, 969 (8th Cir.2001); *United States v. Danhauer,* 229 F.3d 1002, 1007 (10th Cir.2000); *United States v. Procopio,* 88 F.3d 21, 28 (1st Cir.1996); *United States v. Gahagan,* 865 F.2d 1490, 1498 (6th Cir.1989); *United States v. Owens,* 848 F.2d 462, 466 (4th Cir.1988); *United States v. Word,* No. 00–2688, 2001 WL 13133 (7th Cir. Jan.2, 2001) (not designated for publication)). This Court, reviewing the totality of the circumstances, and considering that Smith was involved in all aspects of the investigation of Dodd, finds that she reasonably believed that probable cause existed to execute a search warrant for room 114.

### Questioning of Dodd before **Miranda** warnings given

■ Dodd contends that the evidence recovered in room 114 should be suppressed because police officers improperly questioned Dodd about the room key, and Dodd answered before the officers gave Dodd his *Miranda* warnings. Smith testified that on March 3 police officers arrested Dodd immediately after she identified him driving into the parking lot of the Jack In The Box in Buda. The officers recovered a key in Dodd's pocket during their search incident to Dodd's arrest. Before giving Dodd his *Miranda* warnings, the officers asked him where the hotel room was and Dodd responded that it was at the Stratford Inn in San Marcos.[7]

The Supreme Court recently addressed the *Miranda* rule and held that a failure to give a suspect *Miranda* warnings does not require suppression of the physical fruits of the suspect's unwarned but *voluntary* statements. *United States v. Patane,* —— U.S. ——, 124 S.Ct. 2620, 2626, 159 L.Ed.2d 667 (2004) (emphasis added). Further, the *Patane* court held that potential violations occur, if at all, only upon the admission of coerced or involuntary unwarned statements into evidence. *Id.* at 2628. Here, there is no evidence that Dodd's statement was coerced nor is there any indication that his statement was given involuntarily. This Court finds that the police officers' failure to give Dodd his *Miranda* warnings before asking him where the hotel room was and Dodd's answering them does not prevent the admission into evidence of the subsequently discovered evidence in room 114, which was the fruit of his voluntary statement.

### Issues regarding search of Dodd's residence and computers

■ Dodd also challenges the searches, pursuant to warrants, of his residence and his computer. He contends that because Smith's supporting affidavits for these warrants reference improperly seized evidence from the search of room 114, evidence recovered in the search of his residence and his computer was also recovered illegally and should be suppressed as the fruit of the poisonous tree. *See Wong Sun,* 371 U.S. at 471, 83 S.Ct. 407. Because this Court concludes that the search of room 114 was valid, this Court will deny Dodd's motions to suppress evidence recovered in the searches of his residence and his computer.

---

**7.** The cases cited to this Court by the Government in its post-submission letter are distinguishable from the facts presented because in each of its cases the defendant's pre-*Miranda* statement was referred to explicitly in the supporting affidavit for the search warrant; here Dodd's statement was not. *See United States v. Gonzalez–Sandoval,* 894 F.2d 1043, 1048 (9th Cir.1990); *United States v. Lemon,* 550 F.2d 467 (9th Cir.1977); *United States v. Patterson,* 812 F.2d 1188 (9th Cir.1987). Additionally, Dodd's post-submission letter fails to direct this Court to any authority for its position.

**CONCLUSION**

This Court's conclusion that the good-faith exception to the exclusionary rule applies in this case is guided by the rule's purpose-to deter unlawful police misconduct. *See United States v. Peltier,* 422 U.S. 531, 539, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975). The exclusionary rule was created to guard against police officers who purposely omit critical facts from search-warrant affidavits because such facts *would not* support a finding of probable cause. *See Martin,* 297 F.3d at 1320. This is not the case here. This Court finds that Smith acted in objective good faith when applying for and executing the warrant. This Court finds that Smith did not intentionally omit facts from her affidavit, what she did omit would have increased the likelihood that a magistrate would issue a search warrant, and that Judge Warner maintained his neutral role in issuing the search warrant for room 114. Dodd's motion to suppress the evidence recovered in room 114 will be denied.

Accordingly,

**IT IS ORDERED** that Defendant Larry Winston Dodd's Motions To Suppress (Clerk's Document Nos. 13, 26, 34, and 36) are **DENIED**.