CLAY, Circuit Judge,
with whom MARTIN, MOORE, and COLE, Circuit Judges, join, dissenting.
Today, the majority concludes that a valid search warrant need not describe with particularity “the persons or property to be seized,” so long as an affidavit, neither attached to the warrant nor present at the scene of the search, describes such items. Because I believe the majority’s position to be in error, I respectfully dissent. Not only is the use of a such a *451 warrant contrary to the plain language of the Fourth Amendment and the Supreme Court’s recent decision in Groh v. Ramirez, 540 U.S. 551, 559, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004), but the use of such a warrant violates an individual’s clearly established right to be free from unreasonable searches and seizures. Accordingly, I would deny Defendants qualified immunity and reach the issue of whether Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), bars Plaintiffs’ Fourth Amendment claims. Inasmuch as Heck does not bar all of Plaintiffs’ claims, I would reverse the order of the district court and remand for trial.
I.
This case comes before us as an appeal of a district court’s grant of summary judgment in favor of Defendants. We review a district court’s decision to grant summary judgment de novo. Kalamazoo Acquisitions v. Westfield Ins. Co., 395 F.3d 338, 341 (6th Cir.2005). Summary judgment shall be granted when “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and a judgment is proper as a matter of law.” Fed.R.Civ.P. 56(c). “The district court, and this court in its review of the district court, must view the facts and any reasonable inferences drawn from them in the light most favorable to the party against whom judgment was entered.” Kalamazoo Acquisitions, 395 F.3d at 342 (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). The court may neither weigh the evidence nor make credibility determinations. Logan v. Denny’s Inc., 259 F.3d 558, 570 (6th Cir. 2001).
II.
The majority errs in affirming the district court’s determination that Defendants are entitled to qualified immunity in the instant case. A government official is not entitled to qualified immunity if the plaintiff alleges facts that, if true, establish that the official violated the plaintiffs clearly established federal rights. Saucier v. Katz, 533 U.S. 194, 200-02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); Wilson v. Layne, 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). In determining whether the plaintiff has adequately alleged that an official violated a clearly established federal right, the Supreme Court has instructed courts first to assess whether the defendant-official violated the plaintiffs federal right, and then address whether the right was clearly established at the time the official acted. Saucier, 533 U.S. at 200-01, 121 S.Ct. 2151. In the instant case, Defendants executed a search of Plaintiffs’ property pursuant to a search warrant that failed to state with particularity the items to be seized in violation of the Fourth Amendment. Inasmuch as this right was clearly established in April 2001, when Defendants executed the search of Plaintiffs’ property, Defendants are not entitled to qualified immunity on Plaintiffs’ Fourth Amendment claim.
A. Constitutional Violation
The Fourth Amendment prohibits the government from conducting unreasonable searches and seizures. It states:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, *452 and particularly describing the places to be searched, and the person or things to be seized.
U.S. Const, amend IV. The long-standing jurisprudence of the Supreme Court makes clear that a search is generally unreasonable within the meaning of the Fourth Amendment unless it is authorized by a valid warrant. Groh, 540 U.S. at 559, 124 S.Ct. 1284 (citing Payton v. New York, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)); Camara v. Muni. Court, 387 U.S. 523, 528-29, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). Importantly, the warrant need not only be valid when issued, but also when the search is conducted, to comply with the reasonableness requirement. See Wayne R. LaFave, Search and Seizure § 4.7(a), 646-48 (4th ed.2004) (stating that the execution of a validly issued warrant violates the Fourth Amendment if probable cause dissipates before the execution).
In order to be valid, a warrant must state, with particularity, the items to be seized. U.S. Const, amend IV; Maryland v. Garrison, 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987). “ ‘The test for determining whether the description in the warrant is sufficient to satisfy the particularity requirement [of the Fourth Amendment] is whether ‘the description is such that the officers can with reasonable effort ascertain and identify the [items] intended [to be seized].’ ’ ” United States v. Watkins, 179 F.3d 489, 494 (6th Cir.1999) (quoting Steele v. United States, 267 U.S. 498, 503, 45 S.Ct. 414, 69 L.Ed. 757 (1925) and United States v. Votteller, 544 F.2d 1355, 1362 (6th Cir.1976)). A warrant does not meet the Fourth Amendment’s particularity clause where it fails to “describe the items to be seized at all." Groh, 540 U.S. at 558, 124 S.Ct. 1284. An adequate description is not rendered invalid, however, simply because it “omits a few items from a list of many,” or “misdescribe[s] a few of several items.” Id. Similarly, mere typographical errors do not render a warrant invalid. Id.
The primary purpose of this particularity requirement is to limit the discretion of the officer executing the warrant, thereby preventing the officer from conducting a general search. Gamson, 480 U.S. at 84, 107 S.Ct. 1013. As the Supreme Court explained in Camara, a particular warrant insures that the officer’s discretion is limited both by interposing the judgment of a neutral magistrate and by alerting the individual whose person or property is being searched of the boundaries of that officer’s legal authority. 387 U.S. at 533, 87 S.Ct. 1727.
The warrant at issue in this case was “plainly invalid” inasmuch as it did not describe the items to be seized at all, let alone with particularity. Where the warrant called for a description of the person or property to be seized, it stated “See Attached Affidavit.” (J.A. at 91.) No Affidavit was ever attached to the warrant, however, as the affidavit was sealed at the same time the warrant was issued pursuant to the government’s request. Thus, the ATF’s search was conducted pursuant to an invalid warrant, which failed to describe the property to be seized with particularity in violation of the Fourth Amendment.
The majority erroneously concludes that the warrant was sufficiently particular only by misconstruing the Supreme Court’s recent decision in Groh v. Ramirez, 540 U.S. at 551, 124 S.Ct. 1284. In Groh, the Supreme Court addressed the validity of a warrant that failed to describe the items to be seized. Id. at 554-55, 124 S.Ct. 1284. Where the warrant called for a description of the items to be seized, the petitioning officer entered a description of the property to be searched. Id. The Su *453 preme Court held that the warrant was “plainly invalid” despite the fact that the affidavit upon which the warrant was based described the items to be seized with particularity. Id. at 557, 124 S.Ct. 1284. The Supreme Court reasoned that the “Fourth Amendment by its very terms requires particularity in the warrant, not in the supporting documents.” Id.
Although the Supreme Court declined to address the issue of accompaniment expressly in Groh, as the warrant in Groh did not incorporate the affidavit, the Groh opinion makes it inescapably clear that a warrant cannot satisfy the particularity clause of the Fourth Amendment by reference to an affidavit that is not present at the scene of the search. The Groh opinion contains numerous statements indicating that an affidavit must actually accompany the warrant in order to cure a deficiency in particularity. For example, the opinion states: “But unless the particular items described in the affidavit are also set forth in the warrant itself (or at least incorporated by reference, and the affidavit present at the search) there can be no written assurance that the Magistrate actually found probable cause to search for, and to seize, every item mentioned in the affidavit.” Id. at 560, 124 S.Ct. 1284 (emphasis added). Additionally, the opinion provides: “The presence of a search warrant served a high function ... and that high function is not necessarily vindicated when some other document, somewhere, says something about the objects of the search, but the contents of that document are neither known to the person whose home is being searched or available for inspection,” id. at 557, 124 S.Ct. 1284 (emphasis added), and “[bjecause [the executing officer] did not have in his possession a warrant particularly describing the things he intended to seize, proceeding with the search was clearly ‘unreasonable’ under the Fourth Amendment,” id. at 563, 124 S.Ct. 1284 (emphasis added). These statements in Groh emphasize that the description itself must be present at the scene of the search in order for the search to be reasonable.
Most importantly, however, the rationale behind Groh compels the conclusion that a warrant does not satisfy the particularity requirement unless the incorporated affidavit is present at the scene of the search. The Groh court explained that the Fourth Amendment requires that a warrant describe with particularity the items to be seized not only to prevent general searches but also to “ ‘assure[ ] the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search.’ ” Id. at 561, 124 S.Ct. 1284 (quoting United States v. Chadwick, 433 U.S. 1, 9, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (citing Camara, 387 U.S. at 532, 87 S.Ct. 1727)). A warrant that incorporates an affidavit that is not present at the search cannot serve this function. Id. at 557, 124 S.Ct. 1284. Without seeing a copy of the affidavit, the individual whose property is being searched or seized has no way to know the limits of the officer’s authority. See Larry EchoHawk & Paul EchoHawk, Curing a Search Warrant That Fails to Describe The Place to be Searched, 35 Idaho L.Rev. 1, 25-26 (1998) (“Incorporation, however, is not a sufficient limitation by itself. Incorporation merely brings to the attention of those involved the fact that an additional document must be referenced. If the additional document is not available or not in fact used, incorporation may show the intent of the magistrate but may not limit the actual search when it is performed.”).
Not surprisingly, at least one scholar who has addressed the meaning of Groh reached the same conclusion: that Groh renders warrants that fail to describe the *454 items to be seized invalid, unless an affidavit or application describing the items is 1) expressly incorporated, and 2) present at the scene of the search. LaFave, supra, § 4.6(a), 616. Quoting Groh’s reference to the prevailing theory among Courts of Appeals — that a warrant that fails to meet the particularity requirement may be cured only if the underlying affidavit is incorporated and attached to the warrant-LaFave concludes:
[I]t is clear that the Court in Groh has accepted and adopted the incorporation/aecompanying approach, without specifically saying so.... the court hangs this conclusion not on the particularity-of-deseription function of advising the executing officers what to search for and seize, but rather on the function of notice to the person who premises are being searched.
Id. Given the tone and overall import of the Groh opinion, LaFave’s conclusion is clearly correct.
Nonetheless, the majority holds that Groh does not apply to the facts of this case because Groh did not address accompaniment. According to the majority, “what doomed the warrant in Groh was not the existence of a supporting affidavit that particularly described the items to be seized, but the failure of the warrant to cross-reference the affidavit at all.” Thus, the majority reasons, Groh does not control the facts of this case because the affidavit was properly incorporated.
The problem with the majority’s argument is two-fold. First, the issue in this case is not whether the Fourth Amendment’s warrant clause permits incorporation; rather, the issue is whether incorporation alone is sufficient to cure a warrant that is invalid for lack of particularity, or whether the incorporated affidavit must accompany the warrant in order to cure its deficiency. Thus, Groh is not inapplicable simply because it declined to expressly address accompaniment. Second, Groh does not hold that the warrant “was doomed” simply because it failed to cross reference the relevant affidavit. See Groh, 540 U.S. at 557, 124 S.Ct. 1284. Instead, after noting that the prevailing practice in federal courts of appeals is to allow incorporation where the warrant used express words of reference and the incorporated documents accompanied the warrant, Groh explained, “But in this case the warrant did not incorporate other documents by reference, nor did either the affidavit or the application (which had been placed under seal) accompany the warrant.” Id. (emphasis added). Rather, the warrant was “doomed” both because it failed to both reference the affidavit and because the affidavit did not accompany the warrant. See id.
The sole argument of the majority that carries any weight is that neither the Fourth Amendment nor the Federal Rules of Criminal Procedure always require an executing officer to present a warrant to the individual whose premises are being searched before commencing the search. Thus, the majority reasons, there is no reason to require an incorporated affidavit to be attached to the search warrant and present at the search. This argument, while having facial appeal, does not withstand appropriate analysis inasmuch as the majority’s argument is inapplicable to the facts of this ease. Although it is clear that the Fourth Amendment and the Federal Rules of Criminal Procedure do not always require an officer to present the warrant prior to the search, see United States v. Grubbs, 547 U.S. -, -, 126 S.Ct. 1494, 1501, 164 L.Ed.2d 195 (2006), Groh, 540 U.S. at 562 n. 5, 124 S.Ct. 1284, the Supreme Court has expressly reserved the question of whether an officer’s refusal *455 to present a warrant to the individual being searched when the individual expressly requests to see the warrant is “reasonable” within the meaning of the Fourth Amendment,[1] Grubbs, 126 S.Ct. at 1503 (Souter, J., concurring), Groh, 540 U.S. at 562 n. 5, 124 S.Ct. 1284. In this case, Plaintiffs’ employee, Shafizadeh, expressly requested to see the warrant. Thus, it follows that whether Shafizadeh was entitled to see the warrant in the case at hand is undecided, and the majority’s reasoning assumes a legal conclusion — that the individual being searched has no right to see the warrant— that may or may not be correct. Grubbs, 126 S.Ct. at 1503 (Souter, J., concurring), Groh, 540 U.S. at 562 n. 5, 124 S.Ct. 1284.
Furthermore, a search warrant’s presence at the scene of the search does more than simply inform the individual of the officer’s authority; it also informs the officers of the limits of their authority. The Sixth Circuit itself has recognized this rationale on several occasions. See United States v. Pritchett, 40 Fed.Appx. 901, 907 (6th Cir.2002); United States v. Gahagan, 865 F.2d 1490, 1497 (1989). In fact, this rationale is the basis of the Sixth Circuit rule that an incorporated affidavit generally must be attached to the warrant. See Pritchett, 40 Fed.Appx. at 907; Gahagan, 865 F.2d at 1497-99.
Although it is true that the Sixth Circuit formerly recognized an exception to the attachment rule where the officer who authorized the incorporated affidavit also executed the search, Pritchett, 40 Fed.Appx. at 907; Gahagan, 865 F.2d at 1497-99, and this exception would have been applicable on the facts of this case, Groh overruled this exception. As will be discussed in more detail infra, Groh also involved an affidavit authored by the executing officer, and yet the Supreme Court laid out a rule requiring the affidavit to be present at the scene of the search. See Groh, 540 U.S. at 554-55, 558-63, 124 S.Ct. 1284. Moreover, the Supreme Court’s rejection of the Sixth Circuit’s exception was logical inasmuch as one officer’s knowledge of the contents of an incorporated affidavit does not alone insure that the other executing officers have knowledge of its contents. Additionally, relying on an officer’s memory of an affidavit seems unnecessarily risky.
Finally, the Supreme Court instructed us in Groh that a facially invalid warrant remains invalid, unless cured by proper incorporation and accompaniment. Proper accompaniment requires the incorporated affidavit to be attached to the warrant, or at the very least, present at the scene of the search. The majority is not free to ignore the Supreme Court’s instructions simply because it finds the Supreme Court’s rationale unpersuasive.
The Supreme Court’s recent decision in United States v. Grubbs, 126 S.Ct. at 1494, lends no support to the majority’s argument. Id. The Grubbs opinion addresses a different issue. In Grubbs, the Supreme Court unanimously held that the Fourth Amendment did not require the “triggering conditions” of anticipatory search warrants to be set forth on the face of the warrant. Id. at 1500. The Supreme Court reasoned that the Fourth Amendment “specifies only two matters that must *456 be particularly described in the warrant: ‘the place to be searched’ and ‘the persons or things to be seized.’ ” Id. Inasmuch as the text of Fourth Amendment does not require triggering conditions to be set forth on the face of a warrant, the Supreme Court declined to read such a requirement into the Fourth Amendment for the purpose of assuring the person being searched of the officer’s legal authority. Id. at 1501. The Court passingly noted that “this argument assumes that the executing officer must present the property owner with a copy of the warrant before conducting his search [but] in fact ... neither the Fourth Amendment nor Rule 41 impose such a requirement.” Id. at 1501.
The Supreme Court’s rejection of the defendant’s argument in Grubbs — that the notice function of the particularity clause requires triggering conditions to be set forth on the face of a warrant — does not alter the relevance of the particularity clause’s notice function in this case. A crucial distinction between the case at hand and Grubbs is that this case, like Groh, addresses “items to be seized” whereas Grubbs addressed “triggering conditions.” The text of the Constitution requires the items to be seized to be set forth on the face of a warrant. U.S. Const, amend. IV. In contrast, the text of the Constitution does not require that “triggering conditions” be set forth on the face of a warrant. Id. Inasmuch as the text of the Fourth Amendment does not require “triggering conditions” to be set forth on the face of a warrant, the notice function of the particularity clause is an insufficient reason to impose such a requirement. See Grubbs, 126 S.Ct. at 1500-01.
To say that the notice function of the particularity clause is an insufficiently substantial reason to create an extra-textual requirement for warrants, however, is not to say that an existing textual requirement of the particularity clause does not protect an individual’s interest in being notified of the officer’s authority and its limits. See id. at 1503 (Souter, J., concurring). In other words, Grubbs does not prohibit this Court from considering the notice function of the particularity clause in determining how best to implement the Fourth Amendment’s dictate that “items to be seized” be set forth on a warrant because Grubbs addresses not whether the notice function should be considered when determining-how to implement the Fourth Amendment’s express dictate that “items to be seized” be set forth “on the face of a warrant,” but whether the notice function is a sufficiently important reason to impose additional, extra-textual requirements. Id. at 1501. Rather, that is the province of Groh, and Groh has held that the notice function of the particularity clause is relevant to whether a warrant complies with the particularity clause’s textual requirement that items “to be seized” be set forth on the face of the warrant. See Groh, 540 U.S. at 557-563, 124 S.Ct. 1284 (discussing the purpose of the particularity clause). Because the instant case involves this textual requirement of listing the items to be seized, Groh and not Gfi’ubbs controls. Accordingly, this Court should consider the notice function of the particularity clause in determining whether the warrant in this case was facially deficient. See id.
The weakness of the majority’s position is evidenced by its attempt to buttress its primary argument, the argument addressed above, with collateral arguments. For example, the majority contends that the Constitution does not require officers to leave warrants at the scene of the search even after the search is completed because it would be impossible to do so in a wiretap search. (Maj. Op. at 453-455.) Exceptions, however, do not create the *457 rule. The Constitution has countless requirements for which the Supreme Court makes exceptions. In fact, the warrant requirement itself is open to numerous exceptions, including exigent circumstances. See, e.g., Brigham City v. Stuart, 547 U.S. ---, 126 S.Ct. 1943, 19471948, 164 L.Ed.2d 650 (2006) (exigent circumstances); Georgia v. Randolph, 547 U.S. -, -, 126 S.Ct. 1515, 1520, 164 L.Ed.2d 208 (2006) (consent); Payton v. New York, 445 U.S. 573, 576, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (prohibiting warrantless entry to suspect’s home in order to make a routine felony arrest). Thus, to hold that the Constitution does not require officers to leave warrants at the scene of the search after they complete the search simply because it would be impractical to do so in a narrow set of circumstances defies Supreme Court precedent and logic.
Furthermore, although the majority attempts to obscure this fact, the Supreme Court has not held that the Constitution never requires officers to leave warrants at the scene of the search after the search is completed, but only that it does not require officers to present the warrant prior to the search. See Grubbs, 126 S.Ct. at 1503 (Souter, J., concurring), Groh, 540 U.S. at 562 n. 5, 124 S.Ct. 1284. Similarly, as noted above, the Supreme Court has expressly reserved the question of whether the Fourth Amendment requires an officer to present a warrant upon request. Id.
Additionally, the majority attempts to distinguish the present case from Groh by arguing as follows:
Groh turns on the facial invalidity of the warrant, and not the manner in which the officers conducted the search.... [T]he [Supreme] Court indicated that the constitutional violation at issue was the facial insufficiency of the warrant, not the failure to incorporate the affidavit and bring it during the search.
(Maj. Op. at 443.) However, the failure to incorporate the affidavit and have it accompany the warrant rendered the warrant in Groh facially invalid. Thus, attempting to distinguish between “facial invalidity” and failure to incorporate the affidavit and have it present at the search makes no sense.
The majority also makes much of the fact that a “neutral magistrate” signed the warrant after reading the affidavit. This is entirely beside the point. In addition to satisfying only one purpose of the particularity clause, as discussed above, this argument ignores the fact that the Constitution not only requires a neutral magistrate’s determination on probable cause, but prescribes the manner in which we insure that this requirement is met by requiring the neutral magistrate to list, on the face of warrant, the items to be seized. See U.S. Const, amend. IV. This Court is not free to relieve the magistrate of that constitutional obligation simply because it believes another method is equally adequate.
Finally, the majority inexplicably and repeatedly quotes Dalia v. United States, 441 U.S. 238, 99 S.Ct. 1682, 60 L.Ed.2d 177 (1979), for the proposition that “a search conducted in accordance with a valid warrant does not become warrantless, and therefore ‘presumptively unreasonable,’ due to the manner in which the officers conducted the search.” (Maj. Op. at 441.) The argument is wholly specious. No one is contending that the search in this case was unreasonable because of the manner in which the search was conducted, unless one construes that manner as pursuant to an invalid warrant. The warrant in this case was facially invalid. It did not state the items to be seized. Nor was it cured by proper incorporation and accompani *458 ment. Therefore, the search violated the Fourth Amendment.
In reaching the opposite conclusion, the majority loses sight of the fact that Defendants in this case could have easily avoided this entire suit and its attendant problems simply by transcribing the items listed in the affidavit onto the warrant or onto a list attached to the warrant. Because Defendants failed to complete this simple task, Plaintiffs were forced to move a federal court to unseal the affidavit, and consequently, did not receive a copy of the affidavit until one and a half years after the search occurred because the district court in this case would not unseal the affidavit until after Plaintiff BaransM was convicted. This Court would hardly be imposing any great burden on law enforcement officers by holding that the Defendants’ conduct violated the Fourth Amendment. Such a holding would, however, go a long way in assuring the American people that they live in a country governed by the rule of law.
B. Clearly Established Right
Not only does the Supreme Court’s decision in Groh compel the conclusion that Defendants violated Plaintiffs’ Fourth Amendment rights, but Groh also requires this Court to deny Defendants qualified immunity for the violation. After the Supreme Court determined that the officers in Groh violated the particularity clause of the Fourth Amendment, the Court further held that the officer in charge of the search was not entitled to qualified immunity. Applying the qualified immunity test set forth in Saucier v. Katz, 533 U.S. at 194, 121 S.Ct. 2151, the Supreme Court held that the defendant was not entitled to qualified immunity because the right at issue — the right to be searched only pursuant to a warrant describing with particularity the items to be seized — was clearly established. The right was clearly established because it is set forth in the text of the Constitution itself. Thus the Court reasoned “it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.” Groh, 540 U.S. at 563, 124 S.Ct. 1284 (citing Saucier, 533 U.S. at 194, 121 S.Ct. 2151).
The very same clearly established constitutional right is at issue in this case. That is, Defendants in this case also violated Plaintiffs’ Fourth Amendment right to be searched only pursuant to a warrant describing with particularity the items to be seized. Here too, a reasonable officer would have recognized that his conduct was unlawful because, as in Groh, the warrant was deficient on its face. The warrant utterly failed to describe any items that the officers intended to seize. Instead, it referred the reader to an affidavit that the executing officer intentionally had placed under seal. Because the executing officer himself had the affidavit placed under seal, he must have known that the affidavit was not attached to the warrant or available at the scene of the search. Moreover, any reading of the warrant would necessarily draw attention to the fact that no affidavit describing the items to be seized was attached. Thus, any officer who read the warrant would be forced to recognize that the warrant at the scene did not contain any description of the items to be seized and that the warrant was therefore deficient.
Even assuming the facial invalidity of the warrant in this case was somehow less glaring than the deficiency in Groh, Defendants are still not entitled to qualified immunity. A defendant is not entitled to qualified immunity simply because the official action in question has not previously been declared unlawful. Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). A defendant *459 will also be denied qualified immunity if “in light of pre-existing law the unlawfulness [of the conduct is] apparent.” Id.; see also Wilson v. Layne, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (quoting Anderson). Groh makes it indisputably clear that pre-existing law rendered the unlawfulness of Defendants’ actions apparent. According to Groh, one purpose of the particularity requirement is to inform the individual whose person or property is being searched of the limits of the executing officer’s authority. Groh, 540 U.S. at 561-62, 124 S.Ct. 1284. Moreover, Groh recognized that this purpose is clearly established in Supreme Court case law, stating: “[the Supreme Court has] long held ... that the purpose of the particularity requirement is not limited to the prevention of general searches. A particular warrant also ‘assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search.’ ”[2] Id. at 561, 124 S.Ct. 1284 (quoting United States v. Chadwick, 433 U.S. 1, 9, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), abrogated on other grounds, California v. Acevedo, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991)). Because existing Supreme Court case law made clear that a purpose of the warrant requirement is to inform the individual subject of the search of the limits of the officer’s authority, a reasonable officer would recognize the necessity of providing the individual with a warrant listing the items to be seized.
In light of Groh’s affirmation of the clearly established nature of the right at issue in this case, Defendant’s reliance on this Circuit’s pre-Groh case law is unavailing. Prior to Groh, the law of this Circuit admitted an exception to the general rule that to be properly incorporated an affidavit must be attached to the warrant or present at the scene: where the officer who drafted the affidavit also executed the search, the affidavit did not need to be attached or present. See United States v. Brown, 49 F.3d 1162 (6th Cir.1995). Groh has overruled this exception, however, both for the purposes of the constitutionality of the search and the officer’s entitlement to qualified immunity. As discussed above, the officer in Groh both drafted the affidavit and executed the search. Nonetheless, the Supreme Court made clear that the affidavit was not properly incorporated because the warrant contained no words of incorporation and the affidavit was neither attached to the warrant nor present at the scene of the search. Moreover, Groh held not only that the affidavit must be attached to the warrant or present at the scene, but that failure to do so violated a clearly established constitutional right. The Groh court reached this decision by holding both that the right to a particular warrant was clearly established and that the basis for the right — informing an individual of the officer’s lawful authority and limits of the search — was clearly established. Inasmuch as the Groh search occurred in 1997, it follows that Groh applies to all searches occurring after 1997. The search in this case occurred in 2001, and it therefore follows that it is governed by Groh and not pre-Gro/i circuit case law. Consequently, I would hold that Defen *460 dants are not entitled to qualified immunity-
ill.
Defendants argue that even if they are not entitled to qualified immunity, that the doctrine enunciated in Heck v. Humphrey, 512 U.S. at 480, 114 S.Ct. 2364, requires this Court to dismiss Plaintiffs’ Fourth Amendment claims because a finding in favor of Plaintiffs would necessarily imply the invalidity of Plaintiff Baranski’s conviction for conspiracy and his corresponding sentence. Plaintiff Baranski was convicted in federal district court of conspiring to import machine guns in violation 26 U.S.C. § 5861(1). As a part of his sentence, the district court entered an order, requiring Baranski to forfeit the illegally imported machine guns, which were being stored at Plaintiff Pars’ warehouse. According to Defendants, a finding that the search in this case was illegal would necessarily imply that Baranski’s conviction and sentence are invalid because evidence in the search was used to convict Baranski and later confiscated as a part of his sentence. Contrary to Defendants’ contentions, a finding in favor of Plaintiffs on their Fourth Amendment claims would not necessarily imply the invalidity of Baranski’s conviction. Thus, I would not dismiss Plaintiffs’ claims pursuant to Heck v. Humphrey, 512 U.S. at 480, 114 S.Ct. 2364.
In Heck v. Humphrey, the Supreme Court held that habeas actions, and not § 1983 actions, were the appropriate vehicle for challenging the lawfulness of criminal judgments. 512 U.S. at 480-89, 114 S.Ct. 2364. Accordingly, the Court concluded that claims for relief which “necessarily imply the invalidity of [a] conviction or sentence” are not cognizable under § 1983. Id. at 487, 114 S.Ct. 2364. The Court made sure to clarify, however, that not all Fourth Amendment claims challenging a search that produced evidence introduced in criminal proceedings “necessarily imply the invalidity of [a] conviction.” Id. The Court explained:
[A] suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiffs still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, see Murray v. United States, 487 U.S. 533, 539, 108 S.Ct. 2529, 2534, 101 L.Ed.2d 472 (1988), and especially harmless error, see Arizona v. Fulminante, 499 U.S. 279, 307-308, 111 S.Ct. 1246, 1263-1264, 113 L.Ed.2d 302 (1991), such a § 1983 action, even if successful, would not necessarily imply that the plaintiffs conviction was unlawful.
Id. at 487, 114 S.Ct. 2364 n. 7 (emphasis in original). Heck’s litigation bar applies with equal force to Bivens actions. Robinson v. Jones, 142 F.3d 905, 906-07 (6th Cir.1998).
A hypothetical judgment in this litigation that the search of Pars’ warehouse and the seizure of Baranski’s machine guns was unconstitutional would not “necessarily imply” the invalidity of Baranski’s criminal conviction for conspiracy to illegally import machine guns. The district court in Baranski’s criminal case denied the motion to suppress the machine guns, but indicated that it did “not necessarily believe” that the machine guns were even relevant to the case. On appeal, the Eighth Circuit held that “[t]he warrant should not have been suppressed for lack of particularity” because “the warrant referred to a sealed affidavit that described the weapons,” Baranski, 75 Fed.Appx. at 568 (citing United States v. Cherna, 184 F.3d 403, 412-14 (5th Cir.1999)), but added that even if the weapons should have been *461 suppressed, their admission was harmless error because the documents and testimony proved the government’s case. Id. Consequently, a judgment in this case that the search and seizure was unconstitutional would not necessarily imply the invalidity of Baranski’s conviction. Cf. Heck, 512 U.S. at 487 n. 7, 114 S.Ct. 2364 (opining that “a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiffs still-outstanding conviction ... [bjecause of doctrines like ... harmless error[.]”) (citations omitted).
The analysis does not end here, however, because Heck also requires dismissal of a lawsuit that would necessarily imply the invalidity of Baranski’s sentence or “any outstanding criminal judgment” against him. Heck, 512 U.S. at 487, 114 S.Ct. 2364. The district court entered an order of criminal forfeiture pursuant to the procedures set forth at 21 U.S.C. § 853 after finding that the guns and accessories described in the indictment were property used or intended to be used in a manner to facilitate the commission of the crime for which defendant was convicted. See 26 U.S.C. § 5872(a) (providing that “[a]ny firearm involved in any violation of the provisions of this chapter shall be subject to seizure and forfeiture”); 28 U.S.C. § 2461(c) (providing that where forfeiture of property is authorized by statute but no specific statutory provision is made for criminal forfeiture upon conviction, the government may include the forfeiture in the indictment and upon conviction, the court shall order the forfeiture of the property in accordance with the procedures set forth in 21 U.S.C. § 853); 21 U.S.C. § 853 (providing that the court, “in imposing sentence,” shall order criminal forfeiture as to, inter alia, property used or intended to facilitate the commission of a crime). The Eighth Circuit affirmed the forfeiture order, holding that the evidence supported the district court’s finding that the weapons were intended to be used to commit or facilitate the commission of the charged crime. Baranski, 75 Fed.Appx. at 569 (citing 21 U.S.C. § 853(a)(2)).
Because “[forfeiture is an element of the sentence imposed following conviction,” Libretti v. United States, 516 U.S. 29, 38-39, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995) (emphasis omitted) (interpreting 21 U.S.C. § 853(a)),[3] Baranski seeks to impugn part of his criminal sentence by obtaining an injunction compelling the return of seized firearms, in direct contravention of the forfeiture order. Accordingly, Heck bars Baranski’s Bivens claim to the extent he seeks return of the forfeited machine guns.
Baranski seeks more than just return of the weapons. His complaint requests damages resulting from the fact that the government’s seizure of the weapons placed him “in an economically disadvantaged position in relation to his competitors who are directly benefitting from the actions of the defendants, and the absence of [Baranski] from the marketplace.” (J.A. 22 (Complaint at ¶ 73)); see also id. (“The taking [of Baranski’s machine guns in violation of the Fourth Amendment], has ... impaired plaintiffs’ ability to earn a lawful income from legitimate activities for which they have been licensed and authorized by the United States Treasury.”); id. at 35 (prayer for relief at ¶ 5) (seeking general damages of $186,100). He also seeks compensatory damages for, inter alia, impairment of reputation and *462 mental anguish, as well as punitive damages. See id. at 35 (prayer for relief at ¶ 7) (seeking compensatory damages for impairment of reputation, mental anguish, lost business opportunity as a result of Defendants’ actions, and loss of use of property); id. (prayer for relief at ¶ 9) (seeking punitive damages for constitutional violations).
Heck bars Baranski’s Bivens claim to the extent he seeks damages for the lost economic value of the weapons, whether measured in terms of their appraised value at the time of the unlawful seizure or the potential value Baranski could have received for the weapons had he been able to sell them on the open market at some future time. An award of such damages would directly contravene the forfeiture order, which is premised on the assumption that Baranski no longer has proper title to, and therefore no continuing economic interest in, those weapons. The same logic applies to Baranski’s claim for damages premised on loss of use of the weapons. Because the forfeiture order determined that Baranski no longer owns the weapons, he cannot seek damages for loss of use of those weapons without running afoul of Heck.
Baranski’s request for damages for his injured reputation and mental anguish, as well as his request for punitive damages, are different matters entirely. An award of such damages would not necessarily imply the invalidity of the criminal forfeiture order. The government knew about the existence and location of the forfeited weapons prior to their unlawful seizure from Pars’ warehouse because Baranski had told ATF Agent Johnson about them during an interview. Defendants could have sought and obtained an order forfeiting those weapons without seizing the weapons. Accordingly, the validity of the forfeiture order is not dependent upon the legality of the government’s seizure of those weapons. Cf. One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania, 380 U.S. 693, 699-703, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965) (reversing order forfeiting automobile used to transport untaxed liquor in violation of state law, because search of car potentially violated the Fourth Amendment and the state could not establish an illegal use of the car without using evidence resulting from the allegedly unconstitutional search). It follows that a judgment in this case that Defendants’ seizure of the weapons violated Baranski’s Fourth Amendment rights would not necessarily imply the validity of the forfeiture order. Further, no Heck problem arises, as long as Baranski is limited to recovering damages only for injuries that would not otherwise have arisen from the lawful forfeiture of his weapons. Although he cannot seek the replacement value of the weapons or lost profits due to his dispossession of the weapons, he can seek damages for impaired reputation and mental anguish as well as punitive damages attributable to the means by which Defendants effected the search and seizure. An award of damages for these injuries would not necessarily imply the invalidity of the forfeiture order, the validity of which is entirely independent of the method of the search and seizure.
Although Defendants also raise the Heck bar in opposition to Pars’ Bivens claim, we need not resort to Heck to the extent Pars seeks the return of the forfeited machine guns. See J.A. 35 (Complaint, prayer for relief at ¶ 3) (requesting an order compelling the return of the machine guns to Pars’ warehouse). Pars was notified of the forfeiture proceedings in Baran-ski’s criminal case, and therefore Pars, as a third party, had the opportunity to assert a legal interest in Baranski’s firearms and petition the district court for a hearing to adjudicate the validity of its asserted *463 interest. See FED. R. CRIM. P. 32.2(c)(1); 21 U.S.C. § 853(n)(2). The district court below noted that Pars had filed a claim of ownership in Baranski’s forfeiture proceedings in the Eastern District of Missouri, but there is no information in the Joint Appendix indicating what type of information, if any, Pars submitted to support its claim. Pars could have appealed an adverse decision in the forfeiture proceedings, separate and apart from Baran-ski’s right to appeal his criminal conviction and sentence. E.g., United States v. Harris, 246 F.3d 566, 567 (6th Cir.2001); see also FED. R. CRIM. P. 32.2(c)(4) (“An ancillary proceeding is not part of sentencing.”). There is no indication in the record that Pars ever took such an appeal, and as best as we can tell, the forfeiture order became final, giving the United States clear title to Baranski’s firearms. FED. R. CRIM. P. 32.2(c)(2); 28 U.S.C. § 853(n)(7). Thus, Pars’ claim for return of the weapons is foreclosed by operation of the forfeiture statute, and Pars cannot now bring a collateral cause of action to again lay claim to Baranski’s firearms.
Pars’ Bivens claim is not limited to a request for the return of the machine guns. Pars’ complaint also seeks compensatory and punitive damages directly related to the government’s seizure of those weapons. See J.A. 22 (Complaint at ¶ 73) (“The taking [of Baranski’s machine guns in violation of the Fourth Amendment], has ... impaired plaintiffs’ ability to earn a lawful income from legitimate activities for which they have been licensed and authorized by the United States Treasury.”); id. at 35 (prayer for relief at ¶ 5) (seeking general damages of $186,100); id. at 35 (prayer for relief at ¶ 7) (seeking compensatory damages for impairment of reputation, lost business opportunity as a result of Defendants’ actions, and loss of use of property); id. at 35 (prayer for relief at ¶ 9) (seeking punitive damages for constitutional violations). Apart from Pars’ asserted ownership interest in Bar-anski’s firearms, Pars allegedly had contractual interests connected to those weapons as a bailee who expected compensation for storing them in its warehouse. Pars also allegedly had an interest in being free from unlawful governmental intrusions onto its property. Forfeiture proceedings, however, are not designed to compensate claimants for injuries to these types of interests. The forfeiture proceedings connected with Baranski’s criminal case could address only the proper disposition of Bar-anski’s firearms. See 26 U.S.C. § 5872(a). Pars would not have been permitted to intervene in those proceedings for any reason other than to stake a claim to those firearms. See 21 U.S.C. § 853(k)(l) (providing that “no party claiming an interest in property subject to forfeiture ... may ... intervene in a trial or appeal of a criminal case involving the forfeiture of such property,” other than to assert a legal interest in the property subject to forfeiture).
The question is whether Heck nevertheless bars Pars’ Bivens claim for compensatory and punitive damages. Heck involved an action under 42 U.S.C. § 1983 against county prosecutors and a state police investigator, seeking damages for their allegedly unconstitutional conduct that led to the plaintiffs conviction. Heck, 512 U.S. at 479, 114 S.Ct. 2364. The Court held that “when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence^]” Id. at 487, 114 S.Ct. 2364 (emphasis added). The Court added that “if the district court determines that the plaintiffs action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action *464 should be allowed to proeeed[.]” Id. (emphasis omitted and another emphasis added). The Court expressed particular concern over affording criminal defendants another opportunity to collaterally attack their criminal convictions. Id. at 484-85, 114 S.Ct. 2364 (“This Court has long expressed ... concerns for finality and consistency and has generally declined to expand opportunities for collateral attack[.]”) (citations omitted). Pars, however, is not a prisoner or a former prisoner, and a successful litigation would not demonstrate the invalidity of any outstanding criminal judgment against Pars. Thus, nothing in Heck contemplates extending the bar against civil damages actions to third parties like Pars, whose prior criminal judgments are not at issue.
Moreover, extending Heck to Pars would be fundamentally unfair. As explained above, Defendants searched Pars’ warehouse in reliance on a facially defective search warrant, and their reliance was not objectively reasonable. Yet, barring Pars’ claim pursuant to Heck would leave Pars with effectively no remedy for the unconstitutional intrusion. Although the constitutionality of the search was addressed by the courts of the Eighth Circuit in Baran-ski’s criminal case, Pars had no opportunity to participate in the resolution of that issue.[4] I am unaware of any statutory provision that would have afforded Pars the right to intervene in Baranski’s criminal trial in order to join his suppression motion. Even if Pars had been permitted to intervene, its constitutional claims for damages against the individual ATF agents could not have been adjudicated in that forum because the agents were not parties to Baranski’s criminal proceeding. I also question the efficacy and propriety of trying a criminal action simultaneously with an action for damages. For these reasons, I would also hold that Heck does not bar Pars’ Bivens claims for damages against Defendants.
As a purely factual matter, Pars’ ability to recover damages flowing from the unlawful seizure of the weapons may be greatly circumscribed. The weapons have been forfeited to the government, and that criminal judgment is unassailable. Therefore, to the extent Pars seeks damages for loss of use of the weapons or lost storage costs attributable to their unlawful seizure, Pars’ recovery is temporally limited by the inevitable, lawful forfeiture of those weapons. Pars also can seek compensatory damages for alleged injuries to its reputation and any other financial injury that flowed from the unlawful seizure, as long as the injuries can be distinguished from harm it inevitably would have suffered due to the subsequent, lawful forfeiture of Bar-anski’s weapons. Like Baranski, Pars may also seek punitive damages against Defendants for the manner in which they executed the search and seizure. Given the state of the record, I express no opinion as to whether Pars or Baranski ultimately would be able to marshal sufficient evidence to prove a compensable injury or even to create a genuine issue of material fact that they suffered a compensable injury. They may be entitled only to an award of nominal damages for their constitutional injuries. Those are issues that would be best left to the district court to decide on remand.
Finally, I acknowledge that my dissenting opinion on the Fourth Amendment is *465 sue appears to be at odds with the Eighth Circuit’s holding on the same set of operative facts. Were Plaintiffs to proceed to trial and prevail, Defendants (in their individual capacities) would be found to have flouted the Fourth Amendment, even though they (in their official capacities) previously were found to have acted lawfully. I would note, however, that at the time the Eighth Circuit rendered its decision in Baranski, it did not have the benefit of the Supreme Court’s Groh decision. In any event, the holding proposed by the dissent in the instant case would be preferable to the alternative of leaving individuals and property owners who have suffered patently unconstitutional intrusions without any remedy. I would therefore hold that an action for damages, as circumscribed above, would not necessarily demonstrate the invalidity of any criminal judgment and, consequently, is not barred by Heck.
IV.
For all the foregoing reasons, I would reverse the district court’s dismissal of Plaintiffs’ Bivens claims on qualified immunity grounds; affirm the dismissal of Plaintiffs’ Bivens claims to the extent they seek (a) return of the firearms that were forfeited after Baranski’s criminal conviction or (b) damages attributable to the inevitable, lawful forfeiture of those firearms; and reverse the order of dismissal with respect to Plaintiffs’ claims for compensatory damages that arose from Defendants’ unlawful search and seizure, but that were not otherwise an inevitable result of the subsequent forfeiture. I would also reverse the dismissal of Plaintiffs’ claims for punitive damages.

. I would hold that an officer's refusal to furnish the warrant to an individual whose premises are being searched upon the individual's request is unreasonable within the meaning of the Fourth Amendment. This conclusion is unnecessary to our holding, however, inasmuch as the Supreme Court’s decision in Groh squarely controls the outcome of this case. Under Groh, the warrant in this case was facially invalid, rendering the search unreasonable within the meaning of the Fourth Amendment. See Groh, 540 U.S. at 558, 124 S.Ct. 1284. I mention this only to point out the fallacy of the majority's attempt to undermine the notice function of the particularity clause as set forth in Groh.

. To the extent Grubbs could be interpreted as questioning this rationale, it is inapplicable to our qualified immunity analysis because it was not decided until several years after the search in question occurred. Unlike Groh, the year in which Grubbs was decided is dis-positive of its applicability to the facts of this case because Grubbs does not purport to apply "clearly established" law of 2001 but rather the law of 2005. Groh in contrast contains a qualified immunity analysis and thus applied law clearly established at the time of the search.

. See also FED. R. CRIM. P. 32.2(b)(3) ("At sentencing ... the order of forfeiture becomes final as to the defendant and must be made a part of the sentence and be included in the judgment.”).

. Conceivably, the prejudice to Pars would be even more severe if Baranski's criminal counsel had been ineffective, such as by failing to advance colorable arguments concerning the constitutionality of the search and seizure. Indeed, if Baranski's attorney had failed to contest the search and seizure, the Fourth Amendment issue would not have been litigated at all.